SPERTUS, LANDES & UMHOFER, LLP
James W. Spertus (SBN 159825)
jspertus@spertuslaw.com
Christa L. Culver Wasserman (SBN 289128)
cwasserman@spertuslaw.com
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone: (213) 205-6520
Facsimile: (213) 205-6521

STOEL RIVES LLP
B. John Casey (admitted *pro hac vice*)
john.casey@stoel.com
Brad Daniels (admitted *pro hac vice*)
brad.daniels@stoel.com
Samantha Sondag (admitted *pro hac vice*)
samantha.sondag@stoel.com
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: (503) 294-9170
Facsimile: (503) 220-2480

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY TRAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BEYOND MEAT, INC., et al.,<br><br>Defendants. | Case No. 2:20-cv-00963-MWF<br><br>REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br>Judge: Hon. Michael W. Fitzgerald<br>Courtroom: 5A<br>Date: October 5, 2020<br>Time: 10:00 a.m. |

TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................1

II.     ARGUMENT...........................................................................................2

        A.      Plaintiffs Do Not Plead Falsity .................................................2

                1.      Plaintiffs Mischaracterize Defendants' Statements And Fail To Plead Subjective Falsity ....................................3

                2.      Plaintiffs Fail To Plead Objective Falsity ..................5

                        a.      A Company Must Disclose Only Material Facts That Are Necessary To Make Affirmative Statements Not Misleading ..............................6

                        b.      The Alleged Omissions Do Not Make Any Statement Materially Misleading ....................7

                        c.      The Company's Risk Disclosures And The Public Nature Of The DLF Litigation Preclude A Finding Of Falsity ............................9

                        d.      Plaintiffs' Theory Would Lead To Preposterous Disclosure Requirements................ 11

        B.      Plaintiffs Do Not Plead Scienter .............................................. 12

                1.      Plaintiffs Allege No Facts That Brown Or Nelson Was Aware Of Facts That Contradicted The Company's Opinion Statements................................ 13

                2.      Plaintiffs Fail To Distinguish *Gompper* And *City Of Philadelphia*................................................... 14

                3.      Plaintiffs Fail To Allege A "Core Operations" Theory Of Scienter ................................................ 15

        C.      Plaintiffs Do Not Plead Loss Causation ........................... 17

                1.      The DLF Press Release Is Not A Corrective Disclosure Because It Did Not Reveal New Information........................ 17

                2.      Plaintiffs Acknowledge That All Public Information Was "Promptly Digested" Into The Stock Price ........................... 19

                3.      The DLF Press Release Did Not Show The Challenged Statements To Be False ........................................ 21

III.    CONCLUSION................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
568 U.S. 455 (2013) ................................................................................. 20

*Basic Inc. v. Levinson,*
485 U.S. 224 (1988) ................................................................................. 12

*In re Blue Earth, Inc. Sec. Class Action Litig.,*
No. CV 14-08263-DSF, 2015 WL 12001274 (C.D. Cal. Nov. 3,
2015) ........................................................................................................ 18

*In re BofI Holding, Inc. Sec. Litig.,*
302 F. Supp. 3d 1128 (S.D. Cal. 2018) ......................................... 3, 18, 19

*Bonanno v. Cellular Biomedicine Grp., Inc.,*
No. 15-cv-01795-WHO, 2016 WL 4585753 (N.D. Cal. Sept. 2,
2016) .................................................................................................. 18, 19

*Brody v. Transitional Hosps. Corp.,*
280 F.3d 997 (9th Cir. 2002) ..................................................................... 7

*City of Dearborn Heights Act 345 Police & Ret. Sys. v. Align Tech.,*
*Inc.,*
856 F.3d 605 (9th Cir. 2017) ............................................................ passim

*City of Philadelphia v. Fleming Cos.,*
264 F.3d 1245 (10th Cir. 2001) ......................................................... 14, 15

*Curry v. Yelp Inc.,*
No. 14-cv-03547-JST, 2015 WL 7454137 (N.D. Cal. Nov. 24,
2015), *aff'd*, 875 F.3d 1219 (9th Cir. 2017) ............................................. 8

*In re Facebook, Inc. Sec. Litig.,*
405 F. Supp. 3d 809 (N.D. Cal. 2019) ....................................................... 8

*Gompper v. VISX, Inc.,*
298 F.3d 893 (9th Cir. 2002) ............................................................. 14, 15

*In re Herbalife Ltd. Sec. Litig.,*
No. CV 14-2850, 2015 WL 1245191 (C.D. Cal. Mar. 16, 2015) ............. 18

*In re Herbalife, Ltd. Sec. Litig.*,
   No. CV 14–2850 DSF, 2015 WL 12734014 (C.D. Cal. July 28,
   2015) ............................................................................................................ 18

*In re Herbalife, Ltd. Sec. Litig.*,
   No. CV 14-2850 DSF, 2015 WL 12732428 (C.D. Cal. Mar. 27,
   2015) ............................................................................................................ 20

*Hoffman v. Avant! Corp.*,
   No. C-97-20698-RMW, 1997 U.S. Dist. LEXIS 21823 (N.D. Cal.
   Dec. 18, 1997) ............................................................................................. 10

*In re Intrexon Corp. Sec. Litig.*,
   No. 16-cv-02398-RS, 2017 WL 732952 (N.D. Cal. Feb. 24, 2017) ................ 18

*In re Intuitive Surgical Sec. Litig.*,
   No. 5:13-cv-01920-EJD, 2016 WL 7425926 (N.D. Cal. Dec. 22,
   2016) ............................................................................................................ 20

*Jaroslawicz v. M&T Bank Corp.*,
   962 F.3d 701 (3d Cir. 2020) .......................................................................... 8

*Johnson v. Costco Wholesale Corp.*,
   C18-1611 TSZ, 2020 WL 4816225 (W.D. Wash. Aug. 19, 2020) .................... 17

*Kauffman v. Natural Health Trends Corp.*,
   No. CV 19-163-MWF, 2019 WL 7165921 (C.D. Cal. Dec. 20,
   2019) ............................................................................................................ 10

*Kovtun v. VIVUS, Inc.*,
   No. C 10–4957 PJH, 2012 WL 4477647 (N.D. Cal. Sept. 27, 2012),
   *aff'd*, 591 F. App'x 592 (9th Cir. 2015) ......................................................... 4

*Lefter v. Yirendai Ltd.*,
   No. CV 16–06437–MWF, 2017 WL 2857535 (C.D. Cal. June 20,
   2017) (Fitzgerald, J.) ............................................................................. 11, 12

*Lipton v. Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002) ....................................................................... 17

*Loos v. Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014) ........................................................................ 21

*Lopes v. Fitbit, Inc.,*
No. 18-cv-06665-JST, 2020 WL 1465932 (N.D. Cal. Mar. 23,
2020) ........................................................................................................ 17

*M & M Hart Living Tr. v. Glob. Eagle Entm't, Inc.,*
No. CV 17-1479 PA, 2018 WL 1230570 (C.D. Cal. Jan. 8, 2018) ................... 10

*Markette v. XOMA Corp.,*
No. 15-cv-03425-HSG, 2017 WL 4310759 (N.D. Cal. Sept. 28,
2017) ..................................................................................................... 5, 16

*Matrixx Initiatives, Inc. v. Siracusano,*
563 U.S. 27 (2011) ................................................................................... 6

*Metzler Inv. GMBH v. Corinthian Colls., Inc.,*
540 F.3d 1049 (9th Cir. 2008) .............................................................. 7, 21

*Miller v. PCM, Inc.,*
No. LACV 17–3364–VAP, 2018 WL 5099722 (C.D. Cal. Jan. 3,
2018) ................................................................................................... 18, 19

*Miller v. Thane Int'l, Inc.,*
615 F.3d 1095 (9th Cir. 2010) ................................................................ 20

*In re Nimble Storage, Inc.,*
No. CV–15–05803–YGR, 2016 WL 7209826 (N.D. Cal. Dec. 9,
2016) ...................................................................................................... 11

*Omnicare, Inc. v. Laborers District Council Construction Industry
Pension Fund,*
575 U.S. 175 (2015) ........................................................................ passim

*Petrie v. Elec. Game Card, Inc.,*
308 F.R.D. 336 (C.D. Cal. 2015) ............................................................ 20

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.,*
759 F.3d 1051 (9th Cir. 2014) ............................................................ 16, 17

*In re Rigel Pharm., Inc. Sec. Litig.,*
697 F.3d 869 (9th Cir. 2012) .................................................................. 7

*Rok v. Identiv, Inc.,*
No. 15-cv-5775-CRB, 2017 WL 35496 (N.D. Cal. Jan. 4, 2017) ................... 18

*Rubke v. Capitol Bancorp Ltd.,*
   551 F.3d 1156 (9th Cir. 2009) ........................................................................ 11

*S. Ferry LP, No. 2 v. Killinger,*
   542 F.3d 776 (9th Cir. 2008) .......................................................................... 16

*Schueneman v. Arena Pharmaceuticals, Inc.,*
   840 F.3d 698 (9th Cir. 2016) ............................................................................ 6

*Sudunagunta v. NantKwest, Inc.,*
   No. CV 16-01947-MWF, 2017 WL 8811116 (C.D. Cal. May 16,
   2017) ............................................................................................................... 16

*In re Syntex Corp. Sec. Litig.,*
   95 F.3d 922 (9th Cir. 1996) .............................................................................. 4

*In re Time Warner Inc. Sec. Litig.,*
   9 F.3d 259 (2d Cir. 1993) ................................................................................. 6

*In re VISX, Inc.,*
   Nos. C 00-0649 CRB & C-00-0815 CM2001 ................................................ 15

*Yourish v. Cal. Amplifier,*
   191 F.3d 983 (9th Cir. 1999) .......................................................................... 13

*Zucco Partners, LLC v. Digimarc Corp.,*
   552 F.3d 981 (9th Cir. 2009) .................................................................... 14, 17

**Statutes**

Private Securities Litigation Reform Act ..................................................... 1, 3, 4, 14

**Rules**

Rule 10b-5 ................................................................................................................. 6

Rule 10b-5(b) ........................................................................................................... 6

**Regulations**

17 C.F.R. § 229.103 ............................................................................................... 12

## I. INTRODUCTION

Plaintiffs do not meet the exacting pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). That statute, which establishes a high hurdle to plead *any* securities claim, makes it even more difficult to state a claim challenging opinion statements, which Plaintiffs attempt to do here. Plaintiffs acknowledge in their Opposition that they base their claims on statements of opinion: Beyond Meat's belief that it was "justified" in terminating its contract with its former supplier, Don Lee Farms ("DLF"), and its belief that it is not liable for the claims asserted by DLF in a lawsuit.

"Reasonable investors do not understand such [opinion] statements as guarantees … [and they are] not misleading just because external facts show the opinion to be incorrect." *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175, 187 (2015). But here, remarkably, Plaintiffs do not even allege "external facts" that show that Beyond Meat's opinions were "incorrect" in the first place. The parties are actively litigating the DLF lawsuit, and the Court has not ruled on *any* of the issues upon which Beyond Meat opined.

Undeterred, Plaintiffs in their Opposition argue that Defendants concealed facts that purportedly show that DLF's claims have merit. The "facts" identified by Plaintiffs in their Opposition are no such thing. They instead are disputed *allegations* in the DLF litigation that do not render false or misleading any statement made by Beyond Meat (also, "the Company"), especially in light of the Company's clear risk disclosures about the litigation. Moreover, Plaintiffs' theory relies on the unsupported position that, in describing legal proceedings, a company must disclose reams of minutia, including differing interpretations of evidence, deposition testimony, emails, etc. That is not the law. Plaintiffs have not alleged falsity.

Plaintiffs' scienter allegations fare no better. Plaintiffs argue that Defendants Brown and Nelson "had access to" or "actual knowledge" of facts showing that the

REPLY IN SUPPORT OF MOTION TO DISMISS -1- CASE NO.2:20CV00963

claims asserted by DLF were not meritless, but the actual allegations in the Complaint do not support Plaintiffs' conclusion.  Plaintiffs do not plead facts—much less particularized ones—showing that Defendants Brown or Nelson knew or recklessly disregarded any contemporaneous fact that contradicted any of the Company's opinion statements about the litigation.  Finally, Plaintiffs attempt to plead a corrective disclosure theory of loss causation and acknowledge that, to do so, they must identify a disclosure that reveals the alleged fraud (or at least some aspect of it) to the market.  The lone alleged corrective disclosure identified by Plaintiffs—a January 27, 2020 press release from DLF—does not do this.

## II.  ARGUMENT

### A.      Plaintiffs Do Not Plead Falsity

Plaintiffs' Opposition confirms that they are challenging opinion statements. Plaintiffs specifically challenge the Company's denial of DLF's claims and the Company's statements that it "believed" that it was justified in terminating the ESA, did not misappropriate DLF's trade secrets, and is not liable for the fraud or negligent misrepresentation alleged in DLF's complaint.  (Opp. at 1, 8.)

As noted in Defendants' Motion to Dismiss, the Ninth Circuit has established different tests for pleading the falsity of a statement of opinion that is (1) a "material misrepresentation," and (2) rendered false by omitting material facts. (Mot. at 11-12; *City of Dearborn Heights Act 345 Police & Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615 (9th Cir. 2017); *Omnicare*, 575 U.S. at 179, 194.)  Pleading either theory is "no small task" for an investor, but the former requires subjective and objective falsity and the latter requires facts showing objective falsity.  *City of Dearborn*, 856 F.3d at 615 (quotation marks and citation omitted).

Whether Plaintiffs purport to assert claims based on a material misrepresentation or material omission, they satisfy neither *City of Dearborn* standard. (FAC ¶ 117 (alleging that the Company's statements were "false and misleading or omitted material facts").)

### 1. Plaintiffs Mischaracterize Defendants' Statements And Fail To Plead **Subjective** Falsity

Plaintiffs' Opposition mischaracterizes Beyond Meat's statements. Plaintiffs contend that Beyond Meat "proclaim[ed] … innocence of the allegations," "*represent[ed]* that [it] was *not liable* for the misappropriation of DLF's trade secrets," "*assured* the market that DLF's claims had no merit," and stated that the claims were "baseless." (Opp. at 1-2, 6, 17, 19, all emphasis added.)

Beyond Meat did none of these things. As an initial matter, the Company disclosed detailed risks associated with the DLF litigation. Indeed, directly contrary to Plaintiffs' claim that it "assured" the market that DLF's claims had "no merit," Beyond Meat actually stated: "*[W]e cannot assure you* that Don Lee Farms or ProPortion will not prevail in all or some of their claims" and explained in detail some of the losses that could transpire. (FAC ¶¶ 116, 120, 125, 129 (emphasis added).) Further, Beyond Meat did not state that it denied all of DLF's "allegations," (Opp. at 1), but rather stated that it denied DLF's *claims*, which is precisely what Beyond Meat did in the Answer it filed in the DLF litigation. (Declaration of B. John Casey in Support of Defendants' Motion to Dismiss, Dkt. 58-1 ("Casey MTD Decl."), Ex. 13.)

Moreover, in using the language "we believe," the Company further made clear that it was expressing its opinion; it was not making an unequivocal statement that it would not face liability or that DLF's claims had "no merit" or were "baseless." *In re BofI Holding, Inc. Sec. Litig.*, 302 F. Supp. 3d 1128, 1147 (S.D. Cal. 2018) ("Bofl's statements in its SEC filings that it did not 'expect' that litigation against it would 'have a material adverse effect on the Company's financial condition, results of operations or business' is prototypical opinion-based puffery." (citation omitted)). Nor was the Company even making a prediction—which itself is rarely actionable under the PSLRA—about the outcome of the litigation. *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 929 (9th Cir. 1996) ("[T]he

fact that a prediction proves to be wrong in hindsight does not render the statement untrue when made[.]"); *Kovtun v. VIVUS, Inc.*, No. C 10–4957 PJH, 2012 WL 4477647, at *13 (N.D. Cal. Sept. 27, 2012) ("[T]he statement that defendants expected that the FDA would approve Qnexa can at most be considered a reflection of a bad guess about an event that had not yet occurred.  To say that investors were defrauded by defendants' statements about what a third party (the FDA) was going to do in the future is simply not plausible."), *aff'd*, 591 F. App'x 592 (9th Cir. 2015).

This is a critical distinction that Plaintiffs attempt to gloss over.  Opinion statements, or statements of belief, are protected statements under the PSLRA. As the Supreme Court explained in the seminal *Omnicare* case, a "reasonable person understands, and takes into account" the difference between a "statement of fact and one of opinion" and recognizes that "words like 'I think' or 'I believe' . . . convey some lack of certainty as to the statement's content."  575 U.S. 187-88 (citations omitted) (noting that when reading a registration statement, "which the reasonable investor expects has been carefully wordsmithed to comply with the law," the investor "distinguishes between the sentences 'we believe X is true' and 'X is true[,]' [a]nd because she does so, the omission of a fact that merely rebuts the latter statement fails to render the former misleading").

To put an even finer point on it, the Supreme Court in *Omnicare* noted further:

> [A]lthough a plaintiff could later prove [the CEO's] opinion erroneous, the words "I believe" themselves admitted that possibility, thus precluding liability for an untrue statement of fact.  That remains the case if the CEO's opinion, as here, concerned legal compliance. If, for example, she said, "I believe our marketing practices are lawful," and actually did think that, she could not be liable for a false statement of fact—even if she afterward discovered a longtime violation of law.  Once again, the statement would have been true, because all she expressed was a view, not a certainty, about legal compliance.

*Id.* at 184.

The Supreme Court's reasoning in *Omnicare* controls here. Putting aside that Beyond Meat has not been found liable of *anything* in the DLF litigation, a reasonable investor simply would not take Beyond Meat's statements of belief about the litigation as a guarantee, especially when considering the Company's detailed risk disclosures about the case. Indeed, Beyond Meat's statements of belief here about the DLF litigation are similar to the hypothetical CEO's statements about "legal compliance" referenced by Justice Kagan in *Omnicare*. *Id.* These opinion statements are not actionable as affirmative misrepresentations unless Plaintiffs allege *subjective* falsity, *i.e.*, specific facts that Mr. Brown or Mr. Nelson actually did not believe these statements. *Id.*; *see also City of Dearborn*, 856 F.3d at 616 (plaintiff must allege facts that defendants "did not hold the belief [they] professed"); *Markette v. XOMA Corp.*, No. 15-cv-03425-HSG, 2017 WL 4310759, at *5 (N.D. Cal. Sept. 28, 2017) (rejecting claim where "Plaintiff … makes no effort to allege that Defendants 'did not hold the belief they professed'" (citation omitted)). Plaintiffs do not allege facts showing subjective falsity, and this pleading failure alone is dispositive.

## 2. Plaintiffs Fail To Plead <u>Objective</u> Falsity

To the extent Plaintiffs are asserting an omissions theory only, their failure to plead objective falsity is a separate basis for dismissal. In their Opposition, Plaintiffs include a bulleted list of purported facts that they contend Defendants omitted, but should have disclosed, when describing the DLF litigation. (Opp. at 9-10.) These omitted "facts," according to Plaintiffs, render Defendants' statements of belief false because they "show[] that DLF's allegations had merit and the risk to the Company was substantial." (*Id.* at 8.)

None of these supposed facts show objective falsity, *i.e.*, that Defendants had "no reasonable basis" for their opinion statements. *City of Dearborn*, 856 F.3d at 616. *First*, they are not facts; they instead are disputed allegations in the DLF case. *Second*, even if some of these alleged "facts" could be considered to "cut against"

(Opp. at 8) the Company's opinion statements here, a company of course is not required to disclose every competing fact or piece of evidence, especially in the context of opinion statements.  None of these "facts" comes close to rendering the Company's opinion statements false.  *Third*, Defendants' detailed risk disclosures, and the public nature of the DLF proceedings, also preclude a finding of objective falsity.

          **a.**    **A Company Must Disclose Only Material Facts That Are Necessary To Make Affirmative Statements Not Misleading**

Defendants are not required to disclose all conflicting facts, even if material. Indeed, Plaintiffs are simply wrong when they claim that when Beyond Meat made opinion statements about the DLF litigation, this "triggered a duty to disclose *all* material information regarding the merits, including negative information."  (*Id.* at 7 (emphasis added).)[1]  As an initial matter, it is well-established that "[Section] 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information."  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011).  And no such duty arises "merely because a reasonable investor would very much like to know" the omitted information.  *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993).  This is equally true when a company decides to speak on an issue—there is no requirement to disclose every material fact relating to that issue, or a "completeness rule," as the Ninth Circuit has long made clear that Rule 10b-5 "prohibit[s] only misleading and untrue statements, not statements that are incomplete."  *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir.

---

[1] Plaintiffs' reliance on *Schueneman v. Arena Pharmaceuticals, Inc.*, 840 F.3d 698 (9th Cir. 2016), for this proposition is misplaced.  *Schueneman* involved a drug manufacturer's "affirmativ[e] represent[ations]" and "assur[ances]"—not merely opinion statements—about the safety of its drug.  *Id.* at 707-08. The company made these statements despite its awareness of the FDA having serious concerns over an undisclosed rat study that showed that the rats were developing cancer from the drug.  *Id.*  The Ninth Circuit's holding merely reaffirms the principle that only omissions that materially mislead are actionable.  *Id.*  It did not hold—contrary to longstanding precedent—that a company is required to disclose *all* information that "cuts against" positive statements, much less statements of belief.  *Id.*

2002) ("No matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not[,]" but "[t]o be actionable under the securities laws, an omission must be misleading."); *see also In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8 (9th Cir. 2012) ("[A]s long as the omissions do not make the actual statements misleading, a company is not required to disclose every safety-related result from a clinical trial, even if the company discloses some safety-related results and even if investors would consider the omitted information significant.").

The question instead is whether the omission makes the statement materially misleading. *Id.* That showing is especially difficult in the context of *opinion* statements, like those at issue here. *Omnicare*, 575 U.S. at 194 (stating an omission claim involving an opinion statement is "no small task for an investor"). Indeed, contrary to Plaintiffs' argument, a securities plaintiff does not state a claim if it merely alleges that "an issuer knows, but fails to disclose, some fact cutting the other way," because "[r]easonable investors understand that opinions sometimes rest on a weighing of competing facts." *Id.* at 189-90. In the statement of opinion context, Plaintiffs must identify specific, contemporaneous facts that show that there was "no reasonable basis for the belief.'" *City of Dearborn*, 856 F.3d at 616 (citation omitted); *Omnicare*, 575 U.S. at 194 ("investor must identify particular (and material) facts going to the basis for the issuer's opinion").

### b.      The Alleged Omissions Do Not Make Any Statement Materially Misleading

Plaintiffs' bullet-point list of "omissions" (Opp. at 9-10) are not "facts." They are disputed allegations in the DLF litigation that do not render false any statement made by Defendants. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008) (To plead falsity, the Ninth Circuit requires "the pleading of *specific facts* indicating why [the alleged] [mis]statements were false[.]" (emphasis added)); *City of Dearborn*, 856 F.3d at 619 ("Plaintiff's

*conclusion* based on its belief ... cannot serve as an omission of fact that sufficiently pleads falsity." (emphasis in original)); *Omnicare*, 575 U.S. at 195 (plaintiffs "cannot proceed [on their omissions theory] without identifying one or more facts left out of Omnicare's registration statement.")

Indeed, it is well-established that companies are not required to disclose unproven allegations. *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 836 (N.D. Cal. 2019) ("companies are not required to engage in 'self-flagellation' by disclosing unproven allegations"); *Curry v. Yelp Inc.*, No. 14-cv-03547-JST, 2015 WL 7454137, at *7 (N.D. Cal. Nov. 24, 2015) ("Plaintiffs have again failed to direct the Court to any case holding that customer complaints alleging circumstances that are contrary to defendant's representations independently suffice to establish the falsity of those representations."), *aff'd*, 875 F.3d 1219 (9th Cir. 2017); *Jaroslawicz v. M&T Bank Corp.*, 962 F.3d 701, 713 (3d Cir. 2020) ("registrants need not list speculative facts or unproven allegations").

Plaintiffs' list of alleged omissions (Opp. at 9-10) cites to the Amended Complaint, which in turn generally cites a "Compendium of Evidence" ("COE") that Plaintiffs have never submitted to this Court, but which DLF filed in the course of briefing a summary judgment motion filed by Beyond Meat's co-defendant ProPortion. That motion was denied after the Los Angeles Superior Court expressly held that triable issues of material fact existed. (Declaration of B. John Casey in Support of Defendants' Reply ("Casey Reply Decl."), Ex. 1 at 1.)

The alleged omissions mostly relate to DLF's allegations—not facts—that the Company provided DLF's confidential and proprietary information to a new possible supplier, a contention that the Company vehemently disputes in the litigation. (*See* Opp. at 9-10.) Indeed, Beyond Meat asserts detailed cross-claims against DLF—which never previously manufactured the types of products sold by Beyond Meat—that DLF misappropriated the Company's trade secrets involving manufacturing processes. (*Id.*) The attached appendix provides a more detailed

REPLY IN SUPPORT OF MOTION TO DISMISS                    -8-                    Case No. 2:20-cv-00963

explanation and shows that each allegedly omitted "fact" is instead a disputed allegation that does not render any statement of the Company misleading.

### c. The Company's Risk Disclosures And The Public Nature Of The DLF Litigation Preclude A Finding Of Falsity

"'[W]hether an omission makes an expression of opinion misleading always depends on the context,'" which includes "'all its surrounding text, including hedges, disclaimers, and apparently conflicting information.'" *City of Dearborn*, 856 F.3d at 615 (quoting *Omnicare*, 575 U.S. at 190). As noted above, especially given the Company's risk disclosures[2] and other context surrounding the Company's statements about the DLF situation, no reasonable investor would conclude from Beyond Meat's opinion statements that, as Plaintiffs baldly claim, the DLF litigation posed no risk to the Company. The Company merely stated it denied DLF's claims and that it "believed" that it acted appropriately. The Company did not guarantee, or even predict, a win in the litigation. To the contrary, the Company stated:

> We cannot assure you that Don Lee Farms or ProPortion will not prevail in all or some of their claims against us, or that we will prevail in some or all of our claims against Don Lee Farms. For example, if Don Lee Farms succeeds in the lawsuit, we could be required to pay damages, including but not limited to contract damages reasonably calculated at what we would have paid Don Lee Farms to produce our products through 2019, the end of the contract term, and Don Lee Farms could also claim some ownership in the intellectual property associated with the production of certain of our products or in the products themselves, and thus claim a stake in the value we have derived and will derive from the use of that intellectual property after we terminated our supply agreement with Don Lee Farms. As another

---

[2] Plaintiffs' one-paragraph argument that Defendants "have not challenged" Plaintiffs' claims relating to the risk disclosures is specious. (Opp. at 14-15.) As an initial matter, Plaintiffs' use of bold italics in their Complaint was the only guide as to which specific statements Plaintiffs were challenging, which never even specified whether Plaintiffs were asserting an affirmative misrepresentation or omission theory. (*See, e.g.,* FAC ¶¶ 115, 117.) Plaintiffs now appear to assert in their Opposition that they are principally pursuing an omission theory—that Defendants should have disclosed "contrary facts" relating to the DLF litigation. (Opp. at 7-16.) Defendants fully addressed this theory, and they have also fully addressed *all* claims related to the Company's risk disclosures, including whether they were misleading in any way and whether they provided adequate notice.

example, we also could be required to pay attorney's fees and costs incurred by Don Lee Farms or ProPortion.

(Casey MTD Decl., Ex. 1 at 34-35; *see also id.* at 107-108; FAC ¶¶ 115, 116.) These disclosures very much "convey [the] substantive information" that would be important for investors to assess the risk involving the lawsuit. (Opp. at 15.)[3]

This is not a factual dispute, as Plaintiffs contend. (*Id.* at 16.) The language here is clear. The Company was fully transparent that it could not assure investors about the litigation and stated in detail the potential losses associated with the case. Plaintiffs cannot allege falsity under these circumstances. *Kauffman v. Natural Health Trends Corp.*, No. CV 19-163-MWF, 2019 WL 7165921, at \*6 (C.D. Cal. Dec. 20, 2019) (no falsity where company disclosed that "[t]here can be no assurance that we or our members are in compliance with all of these regulations" and that a failure to comply with regulations "could lead to the imposition of significant penalties or claims and could negatively impact our business"); *M & M Hart Living Tr. v. Glob. Eagle Entm't, Inc.*, No. CV 17-1479 PA, 2018 WL 1230570, at \*4 (C.D. Cal. Jan. 8, 2018) ("Global Eagle warned investors that a final PPA would be issued later and may change materially based on the receipt of more detailed information … On these facts, Plaintiffs cannot adequately allege that the preliminary PPA was false.").

Moreover, the pleadings, the allegations, and the evidence in the DLF case are publicly available, and the Court's disclosures made clear where the case was

---

[3] The unpublished, two-page decision in *Hoffman v. Avant! Corp.*, on which Plaintiffs rely to support their argument that the Company's risk disclosures were "inadequate," is inapposite. No. C-97-20698-RMW, 1997 U.S. Dist. LEXIS 21823, at \*6 (N.D. Cal. Dec. 18, 1997). The company in *Hoffman* faced both an underlying trade secret litigation *and* a criminal investigation, and plaintiff included allegations showing "defendants' knowledge of and participation in trade secret misappropriation." *Id.* at \*5. The court determined that the "bespeaks caution" doctrine did not apply on the pleadings because a jury could find the company's statements misleading notwithstanding risk disclosures. Here, in contrast, Plaintiffs allege no facts showing that Beyond Meat misappropriated anything, and its disclosures identified the specific risks associated with the DLF litigation.

pending. As this Court has previously held, there simply is no duty to disclose information that is already in the public domain. *See, e.g.*, *Lefter v. Yirendai Ltd.*, No. CV 16–06437–MWF, 2017 WL 2857535, at *7 (C.D. Cal. June 20, 2017) (Fitzgerald, J.) ("Nor is it clear that any additional, more detailed disclosure of the risks posed by the Draft Measures was required, given that the Draft Measures had been made publicly available by the Chinese government, and were explicitly referenced in the 2016 Form 20–F."); *accord Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1163 (9th Cir. 2009) (no obligation to disclose information that was publicly available because "'[i]t is pointless and costly to compel firms to reprint information already in the public domain'" and may also be confusing to investors (brackets in original; citation omitted)); *In re Nimble Storage, Inc.*, No. CV–15–05803–YGR, 2016 WL 7209826, at *9 n.10 (N.D. Cal. Dec. 9, 2016).

### d.  Plaintiffs' Theory Would Lead To Preposterous Disclosure Requirements

Plaintiffs apparently wanted Defendants to disclose every tit for tat, every disputed fact, and every good and bad piece of evidence in the DLF litigation. Indeed, based on what Plaintiffs claim are the "omitted facts" (Opp. at 9-10), Plaintiffs would require Beyond Meat's litigation disclosure to include statements like the following:

- "In the litigation, DLF contends that Beyond Meat was 'unhappy' about the minimum purchase requirements. Beyond Meat's position is that it was frustrated that there were food safety issues in DLF's facility, that DLF misrepresented its capacity to serve the Company's production needs, and that DLF caused the Company to invest millions in DLF's facilities."

- "In one of the dozens of depositions taken in the lawsuit, a former Beyond Meat employee testified that Beyond Meat's production process became 'totally different' after entering the supply agreement with DLF. DLF contends that this statement somehow shows that Beyond Meat misappropriated confidential or trade secret information from DLF. Beyond Meat disputes this position and asserts that it did not misappropriate DLF's confidential or trade secret information and further disputes that DLF has or ever created any trade secret information related to Beyond Meat's production processes."

REPLY IN SUPPORT OF MOTION TO DISMISS
-11-
Case No. 2:20-cv-00963

- "In one of the hundreds of thousands of emails produced in the lawsuit, this same former employee stated that the Company's new supplier could be 'up and running' in 2-3 weeks. Without any actual evidence, DLF interprets this statement as an indication that Beyond Meat would use DLF's trade secrets to get the supplier 'up and running.' Such an interpretation is unfounded and Beyond Meat disagrees with this interpretation.  Beyond Meat heavily contests DLF's claim that it created any trade secrets related to Beyond Meat's production processes."

This is absurd.  Neither Regulation S-K, 17 C.F.R. § 229.103, which sets forth the disclosure rules for litigation and requires only a "brief" description of material litigation,[4] nor the securities laws requires this level of minutia.  *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988) (securities laws not designed "'to bury the shareholders in an avalanche of trivial information—a result that is hardly conducive to informed decisionmaking'" (citation omitted)); *Lefter*, 2017 WL 2857535, at *7 ("Yirendai's disclosures never created the impression that the Draft Measures did not put its business model at risk; *they simply did not explain the risk in the manner or level of detail that Plaintiff would have preferred*.") (emphasis added)).

**B.     Plaintiffs Do Not Plead Scienter**

None of the hallmarks of sufficient scienter allegations—confidential witnesses, insider sales, or allegations specifically identifying undisclosed facts known to senior management—is present here.  Plaintiffs instead attempt to allege scienter by claiming, in conclusory fashion, that Messrs. Brown, the CEO, and Nelson, the CFO, "were [in] receipt of information reflecting the true facts" and "were provided with or had access to the information alleged herein to be false or misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected."  (FAC ¶¶ 135, 137.)

---

[4] Plaintiffs appear to concede both that (a) Defendants' description complies with Regulation S-K and (b) this is a relevant factor in determining whether the description is consistent with the securities laws. (*See* Opp. at 16 n.9.)

Plaintiffs' theory is that this alleged information showed that the Company's liability to DLF was a "near certainty." (*Id.* ¶¶ 3, 111.)

But what specific information did Mr. Brown and Mr. Nelson possess showing that the risk of liability was a "near certainty"? Plaintiffs allege DLF was a key vendor of the Company (*id.* ¶ 55), but were Brown and Nelson involved in the issues at the heart of the litigation involving DLF? Were they, for example, involved in the decision to terminate the contract? If so, what was their involvement? Did they receive reports on the legal issues associated with the termination? Who authored such reports, what did the reports say, and when were they received? On DLF's trade secret allegations: what was their involvement, if any, and what specifically did they know and when? More generally speaking, what information supporting the Company's statements of belief did they receive, when, and from whom? What conflicting information, if any, did they receive, when, and from whom?

The Complaint is devoid of such facts, which requires dismissal. (Mot. at 17-19; *see also Yourish v. Cal. Amplifier*, 191 F.3d 983, 994 (9th Cir. 1999) (plaintiff's claim failed where it "allege[d] none of the particulars regarding the non-public information, such as: what medium contained the information (*e.g.*, internal reports); when the information was made available to people inside the company; which of the Defendants the information would have been available to; or when they were aware of the information").)

### 1. Plaintiffs Allege No Facts That Brown Or Nelson Was Aware Of Facts That Contradicted The Company's Opinion Statements

In their Opposition, Plaintiffs identify no facts regarding Nelson's purported involvement in or knowledge of the DLF situation, but they do make a number of contentions regarding Brown's alleged involvement or knowledge, all of which fail. (Opp. at 18-19 (citing FAC ¶¶ 53, 61-64, 67-68, 75-76, 79-83).) These allegations overlap significantly with the alleged facts that Plaintiffs claim were omitted and

establish falsity (*compare id.* at 9-10 *with id.* at 18-19), but in the scienter context, Plaintiffs argue that *Brown was aware* of these "facts."  These contentions fail the scienter prong for the same reason they fail the falsity prong—they are not "facts" and none contradicts the Company's statements of belief.  (*See supra* at 8-9 & Appendix.)

Moreover, many of the contentions do not even concern Brown *at all*.  For example, Plaintiffs contend that Brown knew that: (i) "Beyond Meat had access to DLF's proprietary information, including its Batch Making Protocols" (citing FAC ¶¶ 53, 61-64); (ii) Beyond Meat "shared design drawings with CLW when the Company was still bound by the ESA" (citing *id.* ¶ 83); and (iii) "DLF's Batch Making Protocols were found in ProPortion's files" (citing nothing).  Setting aside that Beyond Meat disputes *all* of these "facts" and that none contradicts any of the Company's statements, the allegations cited by Plaintiffs plainly do not show that Brown was aware of any of these alleged facts.  Specifically, Plaintiffs allege that Brown was aware of the NDA, but not that he had any knowledge that DLF actually provided proprietary information to the Company.  (*Id.* ¶ 53.)  The allegation that the Company sent "design drawings" to CLW stems from deposition testimony of former employee Don Ephgrave, but there is no allegation or indication that Brown was aware of this purported fact or that the alleged design drawings were anything but Beyond Meat's own.  (*Id.* ¶ 83.)  Nor do Plaintiffs' allegations show that Brown was aware that "DLF's Batch Making Protocols were found in ProPortion's files"— a contention that the Company in any event disputes.  (*See infra*.)  None of Plaintiffs' contentions, singularly or collectively, meets the "exacting" scienter standard under the PSLRA.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

**2.      Plaintiffs Fail To Distinguish *Gompper* And *City Of Philadelphia***

Plaintiffs' attempts to distinguish the Ninth Circuit's controlling decision in *Gompper* and the Tenth Circuit's opinion in *City of Philadelphia* fail.  According to

Plaintiffs, *Gompper* is distinguishable because the plaintiff there "alleged only one fact in support of scienter—namely, that defendants were aware that there was an outstanding claim against one of the company's core patents—and failed to show how awareness of that claim established that the defendants knew the patent was invalid." (Opp. at 19.)  In reality, however, the *Gompper* plaintiffs provided "detailed allegations as to the basis for [the underlying patent] claim." *In re VISX, Inc.*, Nos. C 00-0649 CRB & C-00-0815 CM2001, WL 210481, at \*4 (N.D. Cal. Feb. 27, 2001) ("The Complaint includes great detail about the alleged fraud in failing to name Srinivasan as a co-inventor.… Plaintiffs even attach a declaration from Srinivasan to support their allegation that VISX's core patents are invalid and unenforceable.").  Yet even these "detailed allegations" were not enough to show that the defendants *knew* their patents were invalid. *Id.* at \*5.  And the fact that the company was vigorously defending the underlying patent litigation and prosecuting its own affirmative claims—just as Beyond Meat is doing here—created an inference that the company and its officers "fervently believed in the viability of the patent portfolio." *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002).

Plaintiffs are correct that the issue in *City of Philadelphia* was the company's failure to disclose *at all* a litigation in which the company ultimately was *found liable for over $200 million.* (Opp. at 19.)  Plaintiffs nonetheless suggest that the total omission was somehow less problematic than Beyond Meat's statements about the DLF litigation, including its detailed risk disclosures. (*Id.*)  This is not a credible position.  The Tenth Circuit's reasoning applies foursquare here. *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1265 (10th Cir. 2001) ("Plaintiffs have alleged no particular facts on which this court could conclude that Defendants 'must' have known the David's Litigation was meritorious …").

**3.      Plaintiffs Fail To Allege A "Core Operations" Theory Of Scienter**

Plaintiffs do not meet the "high[] hurdle" of alleging scienter through the core operations theory, which applies only in an "exceedingly rare category of cases."

*Sudunagunta v. NantKwest, Inc.*, No. CV 16-01947-MWF, 2017 WL 8811116, at \*9 (C.D. Cal. May 16, 2017) (first quotation); *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 n.3 (9th Cir. 2008) (second quotation). Pleading this theory "is not easy," and requires "either specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations, such as data monitoring, … or witness accounts demonstrating that executives had actual involvement in creating false reports." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014) (citation omitted).

Plaintiffs do not allege any such facts. While the CEO and CFO of Beyond Meat obviously have "high-level" positions (FAC ¶¶ 144, 177) and would have had knowledge of an important supplier such as DLF, this does not mean they were privy to any particular information surrounding the underlying facts or legal issues now at issue in the DLF litigation, *e.g.*, any specific risks or issues associated with the termination of the ESA or the factual or legal issues associated with DLF's other claims (or Beyond Meat's own claims). *See, e.g.*, *Markette*, 2017 WL 4310759, at \*11-12 ("One allegation is notably absent from Plaintiff's complaint: that Defendants had actual knowledge of the unblinded data…. [Plaintiff's] argument essentially amounts to an assertion that, because Defendants coordinated the study and had access to high-level logistical data, they must have also had access to the unblinded data. This is far from sufficient ….").

Moreover, the Individual Defendants' alleged knowledge of the Company's financial statements (Opp. at 21) says nothing about what they knew or should have known about the litigation-related issues. Plaintiffs further contend that Brown and Nelson had "*access to* … emails concerning the negotiations with [the new supplier] and the sharing of DLF's proprietary design drawings on how to set up a manufacturing facility" and "documents produced in the DLF Litigation, which show that DLF's Batch-Making Protocols were discovered in ProPortion's files." (*Id.* (emphasis added).) But mere "access" to information is insufficient to allege

scienter. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002) (rejecting "conclusory" allegation that defendants had "access to" information); *Johnson v. Costco Wholesale Corp.*, C18-1611 TSZ, 2020 WL 4816225, at *7 (W.D. Wash. Aug. 19, 2020); *Police Ret. Sys.*, 759 F.3d at 1062. Additionally, Plaintiffs' allegations do not establish that Nelson and Brown were actually privy to any information about the alleged wrongdoing at issue in the DLF litigation, which, in any event, Defendants flatly dispute. Plaintiffs, in short, have not alleged facts showing that it would be "absurd" to suggest that Brown and Nelson were not aware of any facts that rendered the Company's statements of belief false or unreasonable. *Zucco*, 552 F.3d at 1000.

## C. Plaintiffs Do Not Plead Loss Causation

### 1. The DLF Press Release Is Not A Corrective Disclosure Because It Did Not Reveal New Information

Plaintiffs confirm in their Opposition that they are attempting to plead a corrective disclosure theory of loss causation, and that their only alleged corrective disclosure is DLF's January 27, 2020 press release. (Opp. at 22-25.) Plaintiffs do not dispute the well-established principle that a corrective disclosure must reveal "new" information to the market. (*Id.*) Instead, they contend that the Court cannot make this determination at the pleading stage because this issue should be "reserved for a jury." (*Id.* at 23.)

Plaintiffs are wrong.[5] Courts routinely grant motions to dismiss on loss causation grounds when, like here, it is apparent from the pleadings and the documents cited or incorporated by reference that the alleged corrective disclosure merely rehashes already public facts. *Lopes v. Fitbit, Inc.*, No. 18-cv-06665-JST,

---

[5] Plaintiffs conflate the "truth on the market" defense, which concerns whether a company's omission may be excused because the information was publicly available through other sources, with a corrective disclosure theory of loss causation—which requires that a corrective disclosure contain new information. (Opp. at 23.)

2020 WL 1465932, at *12 (N.D. Cal. Mar. 23, 2020) ("This alleged corrective disclosure cannot serve as a basis for loss causation because it offered 'no new information' to the market." (citation omitted)); *Miller v. PCM, Inc.*, No. LACV 17–3364–VAP, 2018 WL 5099722, at *11 (C.D. Cal. Jan. 3, 2018) (no loss causation where "[p]laintiffs … cannot and do not refute that the [alleged corrective disclosure] … was gleaned entirely from public filings and information that was 'reasonably available' to its author"); *Bonanno v. Cellular Biomedicine Grp., Inc.*, No. 15-cv-01795-WHO, 2016 WL 4585753, at *3 (N.D. Cal. Sept. 2, 2016); *In re Herbalife Ltd. Sec. Litig.*, No. CV 14-2850, 2015 WL 1245191, at *5 (C.D. Cal. Mar. 16, 2015).

DLF in its press release summarized the earlier Superior Court rulings and rehashed its previous public allegations while including its own negative characterizations of the same. (Mot. at 9.) In this sense, the DLF press release is very much akin to blogs or other postings by short-sellers that "merely compile and negatively characterize[s] already publicly-available information." *Miller*, 2018 WL 5099722, at *11. District courts in the Ninth Circuit have repeatedly rejected—on the pleadings—these pieces as "corrective disclosure[s]." *Id.*; *see also BofI*, 302 F. Supp. 3d at 1149; *In re Intrexon Corp. Sec. Litig.*, No. 16-cv-02398-RS, 2017 WL 732952 (N.D. Cal. Feb. 24, 2017), *Rok v. Identiv, Inc.*, No. 15-cv-5775-CRB, 2017 WL 35496, at *20 (N.D. Cal. Jan. 4, 2017); *Bonanno*, 2016 WL 4585753, at *6-7; *In re Blue Earth, Inc. Sec. Class Action Litig.*, No. CV 14-08263-DSF, 2015 WL 12001274 (C.D. Cal. Nov. 3, 2015); *In re Herbalife, Ltd. Sec. Litig.*, No. CV 14–2850 DSF, 2015 WL 12734014, at *5 (C.D. Cal. July 28, 2015).

Plaintiffs do not and cannot argue that the DLF press release said anything "new" or materially different than the two earlier court orders or what was otherwise in the public litigation docket or that the orders were publicly available. They instead argue that the DLF press release "did provide new information to the market" because it "present[ed] obscure, yet publicly accessible information."

REPLY IN SUPPORT OF MOTION TO DISMISS

-18-

Case No. 2:20-cv-00963

(Opp. at 23.)  According to Plaintiffs, because the court orders were "obscure," the "market as a whole could not be presumed to be aware" of them until the DLF press release, which was "released on a national newswire." (*Id.* at 23-24.)  This argument has been repeatedly rejected by courts because "'[o]ne presumes that all public information is incorporated into the market price no matter how far flung it may be.'"  *BofI*, 302 F. Supp. 3d at 1143 (quoting *Bonanno*, 2016 WL 4585753, at *5).  This *identical issue*, in fact, was presented in *Miller*, where a short seller's negative post about the company was gleaned from SEC filings and, like here, state court lawsuits involving the company.  The court rejected plaintiffs' argument that "information [in alleged corrective disclosure] … would be burdensome for the average investor to access" because "the [corrective disclosure] was gleaned entirely from public filings and information that was 'reasonably available' to [the short seller] author."  *Miller*, 2018 WL 5099722, at *11.  The court in *BofI* also rejected this argument even where the publicly available information that the short seller used to draft its commentary was only available through a FOIA request to the SEC.  *BofI*, 302 F. Supp. 3d at 1148 ("Lead Plaintiff offers no reason to believe that other market participants could not have also requested information from the SEC about any investigations into BofI and received the same response.").

Here, the DLF litigation was prominently disclosed by the Company in its SEC filings—indeed, it has been consistently one of the only litigation matters listed—so investors were well aware of its existence.  Plaintiffs "offer[] no reason to believe that … market participants could not have also requested information from [the Los Angeles Superior Court]."  *Id.*

### 2. Plaintiffs Acknowledge That __All__ Public Information Was "Promptly Digested" Into The Stock Price

Plaintiffs, claiming that "the ruling" was issued on Friday January 24, 2020 and noting that the DLF press release was issued on Monday January 27, 2020, argue that the market would not have "immediately" incorporated the facts from

"the ruling" into the stock price. (Opp. at 24.) As an initial matter, there were two relevant "rulings" here, and Plaintiffs are wrong on the dates. The Leave to Amend Order was publicly entered and available on January 21, 2020. (Casey MTD Decl., Ex. 9; *see also id.*, Ex. 5 at 6.) DLF's application for a writ was heard in court on January 21, 2020, and the Superior Court's ruling and reasoning were made public by at least January 22, 2020. (*Id.*, Ex. 11 at 1-15; Ex. 5 at 6-7.)[6]

Thus, there were in fact several days between the publication of the court rulings and DLF's January 27, 2020 press release. As Plaintiffs' own allegations make clear, this is more than sufficient time for an efficient market—which "immediately," "rapidly," or "in a matter of minutes" impounds public information—to digest this information. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("in an efficient market, all publicly available information is rapidly incorporated into, and thus transmitted to investors through, the market price"); *Miller v. Thane Int'l, Inc.*, 615 F.3d 1095, 1103 (9th Cir. 2010) ("in an 'efficient market,' … prices immediately reflect all publicly available information" (citation omitted)); *In re Intuitive Surgical Sec. Litig.*, No. 5:13-cv-01920-EJD, 2016 WL 7425926, at *15 (N.D. Cal. Dec. 22, 2016) ("'An efficient market is said to digest or impound news into the stock price in a matter of minutes.'" (citation omitted)); *In re Herbalife, Ltd. Sec. Litig.*, No. CV 14-2850 DSF, 2015 WL 12732428, at *4 (C.D. Cal. Mar. 27, 2015); *Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 356 (C.D. Cal. 2015).

Indeed, Plaintiffs cannot claim otherwise as they acknowledge these points in their Complaint. (FAC ¶¶ 147-149.) Specifically, to take advantage of the fraud-

---

[6] After ruling on January 21, 2020, the Superior Court asked the parties to submit a proposed judgment effectuating the ruling. (Casey Reply Decl., Ex. 6 at 1.) DLF filed a proposed judgment on January 22, 2020. (Casey MTD Decl. Ex. 11.) On January 23, 2020, Beyond Meat objected to several technical issues associated with the draft judgment, but the substantive ruling on the writ was final as of January 21, 2020. (*Id.*) After considering Beyond Meat's objection to DLF's draft judgment, the Court revised the judgment on January 24, 2020. (*Id.* at 16-18.)

on-the-market presumption to avoid having to plead individual reliance, Plaintiffs themselves allege that "[a]t all relevant times, the market for Beyond Meat securities was an efficient market" and "[a]s a result, the market for the securities *promptly digested* current info [sic] regarding Beyond Meat from *all publicly available sources* and reflected such information in Beyond Meat's stock price." (*Id.* ¶¶ 147-148 (emphasis added).) "All publicly available sources" of course include the publicly available court orders here, and Plaintiffs do not dispute this fact. (Opp. at 23.) As Plaintiffs recognize, the market here would have "promptly" incorporated this information—disclosed on January 21 and 22—and certainly prior to DLF's January 27, 2020 press release.

### 3. The DLF Press Release Did Not Show The Challenged Statements To Be False

Although Plaintiffs attempt to slightly walk back their allegations in their Opposition,[7] their Complaint is premised on their allegation that Defendants failed to disclose that "the Company's liability was a near certainty." (*Id.* ¶¶ 3, 111.) Plaintiffs must point to a disclosure that at least shows that there is some truth to this "near certainty" theory. (Opp. at 22 (acknowledging that a corrective disclosure "reveals the fraud or at least some aspect of the fraud to the market").) They do not do this. Neither the DLF press release nor the Superior Court orders themselves constitutes such a disclosure. *Loos v. Immersion Corp.*, 762 F.3d 880, 889 (9th Cir. 2014) (the disclosure of "a mere 'risk' or 'potential' for fraud is insufficient to establish loss causation" (quoting *Metzler*, 540 F.3d at 1064)).[8]

---

[7] Plaintiffs contend that "Defendants' argument [on loss causation] incorrectly assumes that Plaintiffs' allegations are premised upon an ultimate finding of liability in the DLF Litigation. Plaintiffs have clearly alleged that Defendants misrepresented the risk posed by the DLF Litigation." (Opp. at 24.)

[8] Plaintiffs relegate their "materialization of the risk" argument to a footnote. (Opp. at 25 n.14.) The theory has an uncertain status in the Ninth Circuit and, in any event, no "risk" has materialized here. (Mot. at 24-25.)

## III. CONCLUSION

Defendants respectfully submit that the Court should dismiss this action for the foregoing reasons and for the reasons stated in Defendants' Motion to Dismiss.

DATED:  September 15, 2020

SPERTUS, LANDES & UMHOFER, LLP

/s/ *James W. Spertus*
James W. Spertus
Christa L. Culver Wasserman
617 West 7th Street, Suite 200
Los Angeles, CA  90017
Telephone:  (213) 205-6520
Facsimile:  (213) 205-6521
Email:    jspertus@spertuslaw.com
            cwasserman@spertuslaw.com

STOEL RIVES LLP
B. John Casey (admitted *pro hac vice*)
Brad Daniels (admitted *pro hac vice*)
Samantha Sondag (admitted *pro hac vice*)
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone:  (503) 294-9170
Facsimile:  (503) 220-2480
Email:    john.casey@stoel.com
            brad.daniels@stoel.com
            samantha.sondag@stoel.com

*Counsel for Defendants*

**APPENDIX**

*Analysis of Omitted "Facts" Listed in Plaintiffs' Opposition at Pages 9-10*

***Omitted "Fact" 1:*** "Beyond Meat was unhappy with the ESA because the Company felt the minimum purchase were [sic] excessive." (Opp. at 9.)

***Response:*** No court has determined, or been asked to determine, whether Beyond Meat was "unhappy" with the ESA. DLF has not asserted a breach of contract claim, or any claim, predicated on the Company's "unhappiness," and it is not the basis for a securities fraud claim. In any event, the citations in DLF's own Amended Complaint bely Plaintiffs' assumption: Beyond Meat was frustrated not by the existence of minimum purchase requirements, but by the growing clarity that DLF was simply not "the right food service solution" and DLF's misrepresentations regarding its ability to handle the Company's production requirements. (*See* Casey Reply Decl., Ex. 2 at 42-44.)

***Omitted "Facts" 2 and 3:*** "Beyond Meat began negotiating with CLW two years prior to the expiration of the ESA. When DLF learned of Beyond Meat's negotiations with CLW it warned the Company that such negotiations were in breach of the ESA." (Opp. at 9.)

***Response:*** The ESA did not (and could not) prohibit Beyond from communicating with other companies. Indeed, DLF does not assert a claim for breach predicated on the Company's alleged "negotiat[ions] with CLW." (*See* Casey MTD Decl., Ex. 2.) Rather, DLF (wrongly) asserts that Beyond Meat breached the ESA by, among other things, allegedly disclosing DLF's trade secrets. (*Id.* at 9.) As discussed below, Beyond Meat denies that claim and has asserted its own detailed cross-claims *against DLF* for misappropriating *Beyond Meat's* trade secrets. (*See* Casey Reply Decl., Ex. 2.)

***Omitted "Fact" 4:*** "Defendant Brown lied to DLF's CEO. . . representing that Beyond Meat would not move forward with CLW, when in fact, Company continued to negotiate with CLW to replace DLF." (Opp. at 9.)

REPLY IN SUPPORT OF MOTION TO DISMISS

-23-

Case No. 2:20-cv-00963

*Response:* There has been no fact established in the DLF litigation that Mr. Brown lied to *anyone* about *anything*, nor would this alleged fact render Beyond Meat liable for any claim asserted in the lawsuit.

*Omitted "Fact" 5:* "Beyond Meat was using a proprietary process created by DLF to mass produce its products—a process that was 'totally different' from what the Company had been doing before it entered the ESA." (Opp. at 9.)

*Response:* This is most certainly not a "fact." Beyond Meat has denied DLF's trade secrets claim and has asserted its own detailed trade secret claims *against DLF*. (*See* Casey Reply Decl., Ex. 2 at 10-11.)

*Omitted "Fact" 6:* "Pursuant to the ESA, Beyond Meat could not disclose any confidential information received from DLF (including its BatchMaking Protocols and layout, product flow, room design, and equipment selection needed to manufacture products) without prior written consent." (Opp. at 9.)

*Response:* The NDA was mutual, and Beyond Meat contends that DLF was the only party to violate its terms: by misappropriating Beyond Meat's trade secrets and disclosing a confidential Beyond Meat document to Bloomberg News three days before Beyond Meat's IPO in an effort to undermine the Company's IPO, the latter of which breach is the current subject of a sanctions motion filed by Beyond Meat. (Casey Reply Decl., Ex. 2 at 38-39; Ex. 3.) The evidence, moreover, plainly shows that the "Beyond Burger Batchmaking Protocol" is *Beyond Meat* confidential information that *Beyond Meat provided to DLF* that DLF now is attempting to pass off as its own. (*See* Response to Alleged Fact 10, *infra.*)

*Omitted "Facts" 7-9:* "DLF's replacement, CLW, had no experience mass-producing plant-based meats and needed Beyond Meat's help to 'jump start' the process. Despite having no experience mass-producing plant-based products, Beyond Meat believed CLW 'could be up and running in two to three weeks.' Beyond Meat sent CLW design drawings to produce Beyond Meat products

(something DLF alleges was subject [to] the mutual confidentiality agreement under the ESA)." (Opp. at 9-10.)

*Response:* Opinions regarding CLW's ability to be "up and running" are not facts, they certainly do not establish anyone's liability on any claim in the DLF litigation, and Plaintiffs' citations derive exclusively from a single former Beyond Meat employee, Don Ephgrave. (FAC ¶¶ 77, 82 (citing COE 68, 95-96).) The same is true for the "design drawings" allegations (*see* Am. Compl. ¶ 81 (citing COE 95, 105-106)), about which Ephgrave testified, "I'm pretty sure [another Company employee] showed [CLW] like design drawings of the lines and how it works." Nowhere in that cited testimony does Mr. Ephgrave claim that the alleged design drawings were confidential to DLF, and the Company disputes that it provided any confidential information of DLF to any third party.

*Omitted "Fact" 10:* "DLF's Batch Making Protocol for the Beyond Burger was found in files of ProPortion (CLW's 'alter ego')." (Opp. at 10.)

*Response:* Defendants cite no evidence from the DLF litigation supporting the assertion that the "Batch Making Protocol" was the property of DLF. (*See* Am. Compl. ¶ 89.) That is because no such evidence exists. Instead, the facts show that *Beyond actually sent DLF* the so-called "Beyond Batch Making Protocol" that was located in ProPortion's files and DLF is now attempting to fraudulently pass off as its own. (Casey Reply Decl., Exs. 4, 5.) Nor is it a "fact" that ProPortion and CLW are "alter egos." ProPortion denied this assertion in summary judgment briefing.

*Omitted "Fact" 11:* "Beyond Meat failed to pay for products manufactured and delivered by DLF during the term of the ESA." (Opp. at 10.)

*Response:* Defendants discuss the Writ of Attachment order and its effect on the DLF litigation in the Motion to Dismiss. (*See generally* Mot. at 8-9 ("The order on the 'attachment motion shall have no effect on the determination of any issues in the main action.'" (internal quotation marks omitted) (quoting Writ Order, Casey MTD Decl., Ex. 11 at 7 n.1)).)