# EXHIBIT 3

Electronically FILED by Superior Court of California, County of Los Angeles on 08/25/2020 03:08 PM Sherri R. Carter, Executive Officer/Clerk of Court, by C. Coleman,Deputy Clerk

LATHAM & WATKINS LLP
  Marvin S. Putnam (Bar No. 212839)
    *Marvin.Putnam@lw.com*
  Laura R. Washington (Bar No. 266775)
    *Laura.Washington@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, California 90067
Telephone: +1.424.653.5500
Facsimile: +1.424.653.5501

Attorneys for Defendant and Cross-Complainant
Beyond Meat, Inc.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| DON LEE FARMS, a division of GOODMAN FOOD PRODUCTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> BEYOND MEAT, INC. d/b/a BEYOND MEAT; PROPORTION FOODS, LLC; MARK NELSON; JESSICA QUETSCH; ANTHONY MILLER; and DOES 1 through 10, inclusive, <br><br> Defendants. <br><br>———————————————— <br><br> AND RELATED CROSS ACTIONS. | Case No.    BC662838 <br> Assigned To:  Hon. Holly J. Fujie <br> Dept.:       56 <br><br> **DEFENDANT-CROSS-COMPLAINANT BEYOND MEAT, INC.'S NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST PLAINTIFF-CROSS-DEFENDANT DON LEE FARMS, CROSS-DEFENDANT DONALD GOODMAN, CROSS-DEFENDANT DANIEL GOODMAN, AND LOEB & LOEB LLP; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> *[Declaration of Christopher Yeung filed concurrently herewith; [Proposed] Order lodged concurrently herewith]* <br><br> Date:     September 28, 2020 <br> Time:     8:30 a.m. <br> Place:    Dept. 56 <br><br> **RESERVATION ID: 557944142370** <br><br> Complaint Filed:   May 25, 2017 <br> Trial Date:     June 14, 2021 |

## [REDACTED VERSION – PUBLICLY FILED]

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on September 28, 2020 at 8:30 a.m., or as soon thereafter as counsel may be heard, in Department 56 of the above-entitled Court located at 111 N. Hill Street, Los Angeles, California 90012, Defendant-Cross-Complainant Beyond Meat, Inc. ("Beyond Meat") will and hereby does move for an order imposing sanctions against Plaintiff-Cross-Defendant Don Lee Farms, a division of Goodman Food Products, Inc. ("DLF"), Cross-Defendants Donald Goodman and Daniel Goodman, and their attorneys of record from their law firm Loeb & Loeb LLP ("Loeb"), for intentionally violating the Protective Order entered by the Court on October 11, 2017.

This Motion is made pursuant to California Code of Civil Procedure §§ 128.5, 177.5 and 2030.030, the Protective Order entered by the Court on October 11, 2017, Rule 3.1112 of the California Rules of Court, and supporting case authorities.  This Motion is based upon the concurrently filed Memorandum of Points and Authorities, the Declaration of Christopher Y. L. Yeung, and the exhibits thereto, all files and records in this action, and such evidence and argument as may be presented at the hearing on this Motion.

Dated:  August 25, 2020

Respectfully submitted,

LATHAM & WATKINS LLP
Marvin S. Putnam
Laura R. Washington

By /s/ Marvin S. Putnam
Marvin S. Putnam
Attorneys for Defendant and Cross-Complainant Beyond Meat, Inc.

2

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

BEYOND MEAT'S MOTION FOR SANCTIONS
AGAINST DON LEE FARMS
EXHIBIT 3
Page 2 of 21

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION .................................................................................................6

II.    BACKGROUND ...................................................................................................7

       A.    Beyond Meat And Its Relationship With DLF. .................................... 7

       B.    The Court Enters A Protective Order To Protect Confidential Information. ......... 7

       C.    DLF Challenges Beyond Meat's Designation Of The Site Assessment Report As Confidential, And The Discovery Referee Upholds The Designation. ..................... 8

       D.    DLF's Management Leaks The Report To *Bloomberg News*. .............................. 9

       E.    DLF Falsely Denies Disclosing Confidential Information To The Press. ........... 10

III.   LEGAL STANDARD............................................................................................11

IV.    ARGUMENT........................................................................................................12

       A.    DLF Intentionally Violated The Protective Order. ............................... 12

       B.    DLF Attempted To Cover Up Its Violations Of The Protective Order By Obstructing Beyond Meat's Efforts To Uncover The Source Of The Leak. ....... 14

       C.    Sanctions Are Warranted. ................................................................... 15

             1.    Evidentiary sanctions are appropriate under California Code of Civil Procedure section 2023.030(c) and the Court's inherent authority. ................................................................................ 15

             2.    Monetary sanctions should be imposed on DLF, the Goodmans, and Loeb under California Code of Civil Procedure § 128.5 for Beyond Meat's motion practice to maintain the Site Assessment Report's confidentiality. ................................................. 17

             3.    Monetary sanctions should also be imposed for Beyond Meat's efforts to discover "all pertinent facts" related to the improper disclosure. ............................................................. 18

             4.    Sanctions in the amount of $1,500 are warranted for violations of the Protective Order, under Code of Civil Procedure § 177.5. ................ 19

             5.    DLF and the Goodmans should be ordered to provide all pertinent facts related to the improper disclosure, and the Court should issue any other appropriate sanction. ........................................... 20

V.     CONCLUSION....................................................................................................20

3

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

BEYOND MEAT'S MOTION FOR SANCTIONS
AGAINST DON LEE FARMS

EXHIBIT 3
Page 3 of 21

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Argaman v. Ratan*,
   73 Cal. App. 4th 1173 (1999) ...............................................................................18

*Biles v. Exxon Mobil Corp.*,
   124 Cal. App. 4th 1315 (2004) ........................................................................12, 16

*Clement v. Alegre*,
   177 Cal. App. 4th 1277 (2009) ............................................................................12

*Doppes v. Bentley Motors, Inc.*,
   174 Cal. App. 4th 967 (2009) ..............................................................................16

*Karlsson v. Ford Motor Co.*,
   140 Cal. App. 4th 1202 (2006) ............................................................................16

*Liberty Mutual Ins. Co. v. LcL Admin, Inc.*,
   163 Cal. App. 4th 1093 (2008) ............................................................................16

*Peat, Marwick, Mitchell & Co. v. Superior Court*,
   200 Cal. App. 3d 272 (1988) ..........................................................................12, 16

*R.S. Creative, Inc. v. Creative Cotton, Ltd.*,
   75 Cal. App. 4th 486 (1999) ................................................................................17

*Seykora v. Superior Court*,
   232 Cal. App. 3d 1075 (1991) ........................................................................12, 19

*Stephen Slesinger, Inc. v. Walt Disney Co.*
   155 Cal. App. 4th 736 (2007) ..............................................................................16

*Tenderloin Housing Clinic, Inc. v. Sparks*,
   8 Cal. App. 4th 299 (1992) ..................................................................................18

*Wallis v. PHL Assocs., Inc.*,
   168 Cal. App. 4th 882 (2008) ....................................................................11, 13, 18

*Young v. Rosenthal*,
   212 Cal. App. 3d 96 (1989) ..................................................................................16

4

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
CENTURY CITY

EXHIBIT 3
Page 4 of 21

## STATUTES

Cal. Code Civ. Proc.
    § 128.5........................................................................................................11, 15, 18
    § 177.5...................................................................................................12, 15, 19, 20
    § 2023.010 *et. seq.* ..........................................................................12, 15, 16, 19
    § 2025.480(j)....................................................................................................19
    § 2030.030(a) ............................................................................................16, 19
    § 2033.010......................................................................................................19

## RULES

Cal. Rules of Court, Rule 3.1348 .................................................................................19

5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In a deliberate attempt to taint defendant-cross-complainant Beyond Meat, Inc.'s ("Beyond Meat's") groundbreaking initial public offering ("IPO"), plaintiff-cross-defendant Don Lee Farms ("DLF"), cross-defendant Donald Goodman, and cross-defendant Daniel Goodman secretly leaked a confidential document to the press, in flagrant violation of this Court's Protective Order. This disclosure was made *mere days* before Beyond Meat's highly publicized and anticipated IPO. DLF, the Goodmans, and their counsel at Loeb & Loeb LLP ("Loeb") then spent months misleading Beyond Meat and the Court about the source of the disclosure, purposely obstructing Beyond Meat's efforts to discover how the press obtained an extremely sensitive, confidential report containing Beyond Meat's proprietary business information. It was *six months* later, and only after filing a motion to compel, that Beyond Meat discovered the source of the leak: ***DLF's owner and director Daniel Goodman*** emailed the report to *Bloomberg News*, blind copying DLF's president, Donald Goodman. In his email, Daniel Goodman even acknowledged that the document was subject to the Protective Order and asked the reporter not to name DLF as the source.

DLF and the Goodmans' utter disrespect for the Court's Protective Order and the processes set forth therein justifies sanctions. Their improper disclosure harmed Beyond Meat. Indeed, Beyond Meat was forced to incur significant expenses litigating to protect the confidentiality of the report, discovering the source of the leak, and rectifying any reputational harm. Moreover, DLF and the Goodmans' wanton disregard of the Protective Order seriously calls into question the security of all confidential and proprietary information that Beyond Meat has provided in this litigation. Given DLF's, the Goodmans', and Loeb's gross misconduct, the Court should issue monetary and non-monetary sanctions, including an evidentiary sanction precluding DLF and the Goodmans from using the confidential report in this litigation, including at trial.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

BEYOND MEAT'S MOTION FOR SANCTIONS AGAINST DON LEE FARMS

EXHIBIT 3
Page 6 of 21

## II.    BACKGROUND

### A.    Beyond Meat And Its Relationship With DLF.

Beyond Meat is an innovator in the food space and has led a groundbreaking effort to build meat directly from plants.  (Beyond Meat First Amend. Cross-Compl. at ¶ 1.)  Unlike traditional vegan products, Beyond Meat's plant-based products are designed to provide consumers with the taste, overall sensory experience, and nutritional benefits of animal meat, but are made directly from plant-based ingredients.  (*Id.*)  Over several years, Beyond Meat invested hundreds of millions of dollars on research and development to bring its products to market.  (*Id.* at ¶¶ 2, 28, 94.)  By early 2014, Beyond Meat was well established in the market and producing its proprietary plant-based products, which were available to and consumed by the public.  (*Id.* at ¶¶ 4, 35.)

In 2014, Beyond Meat and DLF began discussions about a potential contractual relationship whereby Beyond Meat would provide raw materials to DLF to process, package, and deliver finished plant-based products for distribution according to specifications provided by Beyond Meat.  (*Id.* at ¶ 4.)  Before DLF was provided access to Beyond Meat's proprietary raw materials and processes, it first agreed to keep them confidential pursuant to a non-disclosure agreement, *i.e.*, the NDA.  (*Id.* at ¶ 37.)

The parties subsequently entered into a supply agreement in December 2014.  (*Id.* at ¶ 39.)  In May 2017, Beyond Meat terminated the parties' agreement due to repeated food safety issues at DLF's facility, including the discovery of dangerous pathogens.  (*Id.* at ¶¶ 10, 83.)  In retaliation, DLF initiated this action against Beyond Meat, asserting frivolous claims for breach of contract and trade secret misappropriation.  (*Id.* at ¶¶ 11, 84.)  On August 11, 2020, Beyond Meat filed an amended cross-complaint against DLF for trade secret misappropriation, trademark infringement, fraud, and breach of contract, and against the Goodmans for fraud.  (*Id.* at ¶¶ 127-72, 183-97, 212-22.)

### B.    The Court Enters A Protective Order To Protect Confidential Information.

On October 11, 2017, the Court entered a Stipulation and Protective Order.  The Protective Order permits a party to designate "as 'Confidential' any Documents . . . that the

7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

BEYOND MEAT'S MOTION FOR SANCTIONS
AGAINST DON LEE FARMS
EXHIBIT 3
Page 7 of 21

Designating Party in good faith believes contains non-public information that is entitled to confidential treatment." (Declaration of Christopher Y. L. Yeung ("Yeung Decl.") ¶ 4, Ex. B at § 2) (Protective Order).) "'Confidential' material may be disclosed only to the Court, attorneys of record, in-house counsel and affiliated staff, the parties' employees . . . , court reporters, deposition witnesses, mock jury participants, and outside experts." (*Id.* at § 8(a)-(h).) Disclosure to additional persons or entities is permitted *only if* the Designating Party agrees in writing. (*Id.* at § 8(i).)

Section 7 of the Protective Order sets forth the procedure for challenging a party's confidentiality designation. To initiate a challenge, counsel for the objecting party must "advise counsel for the Designating Party, in writing, of such objections" and specify reasons and support for such objections. (*Id.* at § 7.) Counsel for the Designating Party then has thirty days to either "agree in writing to de-designate" or "file a motion with the Court seeking to uphold any or all designations." (*Id.*) The Protective Order provides that, "[p]ending a resolution of the Designation Motion by the Court, any and all existing designations on the Documents, Testimony, or Information at issue in such Motion shall remain in place." (*Id.*)

**C.      DLF Challenges Beyond Meat's Designation Of The Site Assessment Report As Confidential, And The Discovery Referee Upholds The Designation.**

On March 13, 2019, Loeb emailed Beyond Meat's counsel stating that "pursuant to section 7 of the Protective Order," DLF objected to Beyond Meat's designation of certain documents produced in this action as "Confidential." (*See* Yeung Decl. ¶ 5, Ex. C (Email from E. Lee, dated March 13, 2019).) One of the documents at issue was a site assessment report from a third party that Beyond Meat commissioned to conduct a sensitive and confidential review of one of its own manufacturing facilities (the "Site Assessment Report"). Not only did Beyond Meat produce the Site Assessment Report *in this litigation* as a "Confidential" document, but it also disclosed the same report to DLF before the litigation, pursuant to the strictest expectations of confidentiality under the parties' NDA. (*See id.*, ¶ 6, Ex. D.)

On April 12, 2019, Beyond Meat timely filed a motion to uphold the confidentiality designation of the Site Assessment Report, in accordance with Section 7 of the Protective Order.

8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

BEYOND MEAT'S MOTION FOR SANCTIONS
AGAINST DON LEE FARMS
EXHIBIT 3
Page 8 of 21

(*See* Yeung Decl., ¶ 7, Ex. E (Mot. to Uphold Confidentiality Designations, April 12, 2019).) On May 24, 2019, the Discovery Referee recommended granting Beyond Meat's motion in full, reasoning that each of the reports "████████████████████████████████ ████████████████████████████████," and ████████████████████████ ████████████████████ (*Id.*, ¶ 9, Ex. G (Rep. and Rec. at 4, May 24, 2019).) DLF never objected to the Referee's Report and Recommendation and the Court filed it under seal. (*Id.*, ¶ 10, Ex. H (August 21, 2019 Minute Order).)

### D.     DLF's Management Leaks The Report To *Bloomberg News.*

Unbeknownst to Beyond Meat, in late-April 2019, cross-defendant Daniel Goodman, on DLF's behalf, engaged in an unconscionable violation of the Protective Order and the parties' NDA. On April 22, 2019, he emailed a *Bloomberg News* reporter previewing that DLF had recently filed fraud claims, and that "there is [sic] pending supporting documents of this claim being submitted and ***will send once public.*" (*Id.*, ¶ 24, Ex. U, at DLF0245201) (emphasis added).) On April 27, 2019, in another email blind copying his father, Daniel Goodman told the reporter "Beyond Meat is now trying to make sure the public can't see the documents related to fraud by asking the court to keep them under seal." (*Id.* at DLF0245204.) Daniel Goodman expressly understood that the Site Assessment Report was "under seal" and could not be disclosed to non-parties to the litigation. That, however, apparently did not matter. On April 29, 2019, Daniel Goodman blind copied his father Donald Goodman and emailed the *Bloomberg* reporter a copy of the Site Assessment Report. (*Id.* ¶ 23, Ex. V, at DLF0245276-84.)[1]

This leak was insidious. It was made ***just three days before Beyond Meat's 2019 IPO***. (Beyond Meat First Amend. Cross-Compl. at ¶ 118.) Beyond Meat was the first plant-based meat company ever to launch an IPO, and that highly publicized event was set for May 2, 2019. (*Id.* at ¶ 113.) Thus, the very timing of Daniel Goodman's emails to *Bloomberg News* reveal that DLF and the Goodmans' misleading and unlawful disclosure of a confidential document was a blatant attempt to tarnish the IPO and manipulate Beyond Meat's stock price.

---

[1] Cross-Defendant Donald Goodman is DLF's President, and Daniel Goodman is a part-owner. (Beyond Meat First Amend. Cross-Compl. ¶¶ 16, 36.)

9

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
CENTURY CITY

BEYOND MEAT'S MOTION FOR SANCTIONS
AGAINST DON LEE FARMS

EXHIBIT 3
Page 9 of 21

Moreover, the disclosure was made with full knowledge that Beyond Meat's motion to maintain the confidentiality of this report *was still pending*.  (Yeung Decl. ¶ 24, Ex. U, at DLF0245204.)  Indeed, knowing the leak was unlawful, when the *Bloomberg News* reporter asked Daniel Goodman if it was "OK to use [the provided information] in the story," Daniel Goodman replied "yes," but requested that DLF *not be named as its source*.  (*Id.* ¶ 24, Ex. W, at DLF0245285-86.)  Thus, in the early morning of May 3, 2019, the day after Beyond Meat's IPO, *Bloomberg News* published an article directly quoting from the confidential Site Assessment Report that Daniel Goodman provided just a few days earlier.  (*Id.* ¶ 11, Ex. I.)

### E.    DLF Falsely Denies Disclosing Confidential Information To The Press.

After discovering the *Bloomberg News* article, on May 3, 2019, Beyond Meat immediately sent a letter to DLF's counsel demanding that DLF cease disclosing Beyond Meat's confidential information to non-parties.  (Yeung Decl. ¶ 11, Ex. I.)  Beyond Meat also demanded that DLF provide "all pertinent facts" related to its apparent unauthorized disclosure.  (*Id.*)  On May 7, 2019, Loeb responded, "neither Loeb & Loeb LLP nor Don Lee Farms has disclosed any confidential material to Bloomberg."  (*Id.* ¶ 12, Ex. J.)  Given the Goodmans' communications with *Bloomberg News*, this representation was demonstrably ***false***.

Beyond Meat repeatedly asked DLF to state whether it had shared a copy of the report with *Bloomberg News*, but DLF refused.  (*See, e.g.*, *id.* ¶¶ 13, 14, Exs. K, L.)  DLF also suggested *to this Court*, and to a Georgia state court adjudicating a motion to quash a third-party subpoena, that it did not share a copy of the report with the press.  (*See id.* ¶ 16, Ex. N (Reply in Supp. of DLF's Mot. to Compel De-Designation, June 18, 2019) (stating Beyond Meat raised an "irrelevant and unsubstantiated claim that some document that DLF had in its possession was disclosed by an unknown person to the press in violation of the existing protective order"); ¶ 17, Ex. O (Response to Mot. to Quash Subpoena, June 10, 2019) (stating Beyond Meat had only a "suspicion that Don Lee Farms recently shared with the press" the Site Assessment Report, and adding that DLF had never confirmed to Beyond Meat that it provided the report to the press).)

On July 2, 2019, seeking to probe DLF's (now-proven) false assertions, Beyond Meat served DLF with Document Request No. 65 ("RFP 65"), which sought "All DOCUMENTS

10

RELATING to any COMMUNICATIONS by YOU with any journalist, reporter, or news agency regarding this LAWSUIT and/or the AUDIT REPORT, including without limitation any COMMUNICATIONS by and between Donald Goodman and/or Danny Goodman, and/or Brandon Goodman on the one hand, and Bloomberg News, on the other hand." (*Id.* ¶ 18, Ex. P.) DLF refused to produce any documents in response to RFP 65. (*Id.* ¶ 19, Ex. Q.)

Over the next three and half months, DLF resisted producing any documents. Beyond Meat ultimately agreed to narrow its request to all documents created between December 2014 and July 5, 2017 that DLF shared or provided to the media about this lawsuit or the audit report at issue. (*Id.* ¶ 20, Ex. R.) DLF still refused to produce the documents, claiming that it did not see "the relevance of the[] documents" requested. (*Id.* ¶ 21, Ex. S.) Instead, DLF "offered" to produce the documents Beyond Meat sought, but only if DLF could impose an inequitable burden on Beyond Meat to produce not just its communications with the press, but also with "the SEC" and "Beyond Meat's potential investors." (*See id.*)

Given DLF's gamesmanship and obstruction, on November 12, 2019, Beyond Meat filed a motion to compel the production of documents responsive to RFP 65. (*Id.* ¶ 23, Ex. T (Mot. to Compel Resp., Nov. 12 2019).) Realizing that it could no longer hide, a few days later—and *over six months* after Beyond Meat first demanded information regarding DLF's unauthorized disclosure—DLF finally produced its communications with *Bloomberg News*. (*Id.* ¶ 24, Ex. Z (Production Cover E-mail).) This production was made solely to moot Beyond Meat's pending motion to compel and avoid having this issue heard by the Court. DLF's production confirmed, as Beyond Meat suspected (and contrary to DLF and Loeb's representations), that DLF and the Goodmans shared Beyond Meat's confidential Site Assessment Report with *Bloomberg News*.

## III.   LEGAL STANDARD

California courts may impose sanctions for the improper dissemination of confidential information in violation of protective orders. Cal. Code Civ. Proc. § 128.5; *see Wallis v. PHL Assocs., Inc.*, 168 Cal. App. 4th 882, 885 (2008) (affirming sanctions award for release of confidential information to third parties, which the court found to be a bad-faith violation of the protective order). Likewise, Section 2023.030 of the Code of Civil Procedure and the Court's

11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

BEYOND MEAT'S MOTION FOR SANCTIONS
AGAINST DON LEE FARMS

EXHIBIT 3
Page 11 of 21

inherent powers authorize the Court to impose monetary, evidentiary, and other non-monetary sanctions for "misuse[s] of the discovery process," especially those that involve confidential information.  *See* Cal. Code Civ. Proc. § 2023.030; *see also Peat, Marwick, Mitchell & Co. v. Superior Court*, 200 Cal. App. 3d 272, 286-87 (1988) (court's "inherent power to preclude evidence to cure abuses or overreaching involving confidential information").

For a monetary sanction to be imposed under section 2023.030, "[t]here is no requirement that misuse of the discovery process must be willful."  *See Clement v. Alegre*, 177 Cal. App. 4th 1277, 1286 (2009).  However, for the imposition of non-monetary sanctions, "(1) absent unusual circumstances, there must be a failure to comply with a court order, and (2) the failure must be willful."  *See Biles v. Exxon Mobil Corp.*, 124 Cal. App. 4th 1315, 1327 (2004).  Finally, Section 177.5 permits a court to impose monetary sanctions of up to $1,500 against a party for violation of a lawful court order without good cause or substantial justification.  *See* Cal. Code Civ. Proc. § 177.5; *Seykora v. Superior Court*, 232 Cal. App. 3d 1075, 1081 (1991), *opinion modified* ("[S]ection 177.5 does not even require a willful violation, but merely one committed . . . without a valid excuse.").

## IV.  ARGUMENT

DLF, the Goodmans, and Loeb should be sanctioned for their deliberate and willful violations of the Protective Order and their lack of candor in these proceedings.  DLF's own documents show that the Goodmans, as owners, officers, and employees of DLF, were fully aware that the Site Assessment Report was designated confidential, but shared a copy with *Bloomberg News* anyway.  Despite knowing the conduct was wrong, DLF, the Goodmans, and Loeb spent months obstructing Beyond Meat's efforts to identify the source of the leak and intentionally misleading Beyond Meat and the Court.

### A.  DLF Intentionally Violated The Protective Order.

The Protective Order provides that "[t]he Designating Party shall have the right to designate as 'Confidential' *any* Documents, Testimony or Information."  (Yeung Decl. ¶ 4, Ex. B (Protective Order) at § 2) (emphasis added).  Where, as here, the terms of a protective order explicitly govern, an intentional violation of those terms is sanctionable.  *Wallis*, 168 Cal. App.

12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

BEYOND MEAT'S MOTION FOR SANCTIONS
AGAINST DON LEE FARMS
EXHIBIT 3
Page 12 of 21

4th at 897-98.  By intentionally sharing the Site Assessment Report with the press—designated "Confidential" pursuant to the Protective Order—DLF violated the Protective Order.

As the Referee held, the Site Assessment Report "████████████████████████████████ ████████████████████████████████████"  (Yeung Decl. ¶ 9, Ex. G (R. & R.) at 4.)  Beyond Meat shared a copy of the report with DLF *under the strictest expectations of confidentiality, including the terms of an NDA that restricted the report's dissemination and under which all such information is presumed confidential*.  DLF and the Goodmans unequivocally knew it was confidential.  Yet, despite the Protective Order's express directive that "any and all existing designations on the Documents, Testimony, or Information at issue in such Motion shall remain in place" while a motion to uphold the confidentiality designation is pending, DLF shared a copy of the report with *Bloomberg News*—clearly an unauthorized recipient of "Confidential" information under the Protective Order—while Beyond Meat's motion to maintain the "Confidential" designation was pending.  This intentional disclosure was made in an attempt to influence Beyond Meat's IPO.

There is no excusing this conduct.  The Goodmans (and DLF) were fully aware of the Protective Order's restrictions.  Indeed, before they disclosed the report to *Bloomberg News*, DLF repeatedly represented to this Court that the report's "Confidential" designation *prevented* DLF from disclosing it publicly.  (*See* Yeung Decl. ¶ 2, Ex. A (Mot. for Leave to File SAC), at 7 n.5 ("As Beyond Meat designated the relevant documents 'confidential,' none of them have been filed with this motion to avoid burdening the Court and the parties with the procedures of having them filed under seal.")); *id.* ¶ 8, Ex. F (Opp'n to Beyond Meat's Mot. to Uphold Confidentiality Designations), at 6 ("Beyond Meat's decision to designate the Report, the Modified Report, and the transmittal emails as confidential has prevented their public filing, despite being the basis for the fraud claims in DLF's Second Amended Complaint."); *id.* ¶ 15, Ex. M (DLF's Opp'n to Demurrer) (claiming that the Site Assessment Report is "**subject to a pending motion filed by Beyond Meat** to maintain the 'confidential' designations preventing their public disclosure" (emphasis in original)).)  DLF and the Goodmans indisputably knew that they could not disclose the Site Assessment Report given its confidential designation.

13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

BEYOND MEAT'S MOTION FOR SANCTIONS
AGAINST DON LEE FARMS
EXHIBIT 3
Page 13 of 21

Moreover, in his communication with *Bloomberg News*, Daniel Goodman even ***acknowledged the confidential nature of the report***, telling the *Bloomberg News* reporter ***that he was restricted from providing the report*** because Beyond Meat was seeking to "keep [it] under seal." (*See* Yeung Decl. ¶ 24, Ex. U (emphasis added)); *see also* Section, II.C, *supra*.

By knowingly sharing a confidential report with the press—and doing it while Beyond Meat's motion was pending—DLF and the Goodmans wasted considerable judicial and party resources litigating the report's confidentiality status before the Referee. More importantly, they have called into serious question their commitment to abide by the Protective Order, which Beyond Meat has relied upon in producing a host of confidential and proprietary business information in this trade secret litigation. Under the circumstances, Beyond Meat is gravely concerned that its confidential and proprietary information is at risk.

**B.   DLF Attempted To Cover Up Its Violations Of The Protective Order By Obstructing Beyond Meat's Efforts To Uncover The Source Of The Leak.**

Were the flagrant violation of the Protective Order not enough (it is), DLF, the Goodmans, and Loeb made matters worse by *for months* obstructing Beyond Meat's efforts to uncover the truth. This subsequent conduct further justifies the imposition of sanctions. On May 3, 2019, the same day *Bloomberg News* published portions of the Site Assessment Report, Beyond Meat immediately confronted DLF about its apparent improper disclosure. (Yeung Decl. ¶ 11, Ex. I (demanding DLF provide "all pertinent facts relating to" its apparent disclosure of the site assessment report to *Bloomberg News*).) Rather than acknowledge its wrongdoing, DLF—through Loeb—told Beyond Meat "neither Loeb & Loeb LLP nor Don Lee Farms ***has disclosed any confidential material to Bloomberg***." (*Id.* ¶ 12, Ex. J (emphasis added).) This was a categorically ***false*** statement. As DLF's own documents demonstrate, DLF and the Goodmans knew the report was confidential but still disclosed it to *Bloomberg*.

DLF even had the audacity to claim that Beyond Meat's belief that DLF was the source of the leak was an unfounded conspiracy theory. It doubled down on that claim and violated its duty of candor to this Court, claiming, again through Loeb, that Beyond Meat's suspicions were based on an "unsubstantiated claim" that "DLF had in its possession [a document it] disclosed by

14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

BEYOND MEAT'S MOTION FOR SANCTIONS
AGAINST DON LEE FARMS
EXHIBIT 3
Page 14 of 21

an unknown person to the press in violation of the existing protective order." (Yeung Decl. ¶ 16, Ex. N (Reply in Supp. of DLF's Mot. to Compel De-Designation, June 18, 2019).) In this regard, Loeb's conduct violated its duty of candor and sanctions are warranted against the firm.

All the while, Beyond Meat expended a significant effort to identify the source of the leak. Throughout that process, DLF refused to produce communications with press agencies. Instead, it harassed Beyond Meat with completely irrelevant document requests to intimidate Beyond Meat into abandoning its efforts to identify the source of the disclosure. After months of roadblocks, Beyond Meat was forced to file a motion to compel. It was only after that motion was filed that Beyond Meat was able to obtain the incriminating emails. There is simply no excuse for this conduct and absolute lack of candor.

## C. <u>Sanctions Are Warranted.</u>

Under Code of Civil Procedure §§ 128.5, 177.5, and 2023.030 *et. seq.*, and the Court's inherent authority to control litigation, this Court should sanction DLF, the Goodmans, and Loeb for their (1) willful violations of the Protective Order, *and* (2) subsequent bad faith abuse of the discovery process. Given the serious nature of this conduct and the flagrant disregard for Court orders, the Court should impose evidentiary sanctions that ought to preclude—at a minimum— DLF's and the Goodmans' ability to use any version of the report in this litigation, including at trial. Separately, DLF, the Goodmans, and Loeb should make Beyond Meat whole by reimbursing the expenses Beyond Meat undertook to maintain the confidentiality of the Site Assessment Report. Finally, the Court should issue monetary sanctions and require DLF, the Goodmans, and Loeb to disclose all the facts surrounding its violations of the Protective Order, including whether it has shared any more of Beyond Meat's confidential information with other third parties.

### 1. <u>Evidentiary sanctions are appropriate under California Code of Civil Procedure section 2023.030(c) and the Court's inherent authority.</u>

This Court has the "inherent power to preclude evidence to cure abuses or overreaching involving confidential information." *Peat, Marwick, Mitchell & Co.*, 200 Cal. App. 3d at 286-87. For evidentiary sanctions sought because of "misuse[s] of the discovery process," the Code

15

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
CENTURY CITY

of Civil Procedure typically requires a willful failure to comply with a court order. *See Biles*, 124 Cal. App. 4th at 1327. Yet, if the misconduct is deliberate and egregious, it "need not be preceded by a violation of a court order" to warrant evidentiary sanctions. *Stephen Slesinger, Inc. v. Walt Disney Co.* 155 Cal. App. 4th 736, 762-63 (2007).

Here, DLF, the Goodmans, and Loeb unquestionably engaged in egregious misconduct and willful violations of a court order, and then concealed that misconduct *for months*. The misdirection, obstruction, and refusal to produce documents disclosing their violations of the Protective Order until Beyond Meat filed its motion to compel is a sanctionable "misuse of the discovery process" under Cal. Code Civ. Proc. § 2023.030(a). *See also* § 2023.010 ("misuses" include making an "unmeritorious objection to discovery" and "[d]isobeying a court order to provide discovery"). This is precisely the type of conduct courts find warrant serious evidentiary sanctions. *See, e.g.*, *Young v. Rosenthal*, 212 Cal. App. 3d 96, 119 (1989) (upholding evidentiary sanctions where party repeatedly misused discovery and violated court orders); *Karlsson v. Ford Motor Co.*, 140 Cal. App. 4th 1202, 1215-16 (2006) (evidentiary sanctions appropriate where "offending party has engaged in a pattern of willful discovery abuse").

Courts have even ordered *terminating* sanctions where, as here, a party violates a court order and then repeatedly misleads the Court and the opposing party about it. For instance, in *Doppes v. Bentley Motors, Inc.*, 174 Cal. App. 4th 967, 991 (2009), the Court held that the trial judge abused his discretion by failing to order terminating sanctions where the offending party withheld documents that the court ordered produced, and then submitted declarations lying about it. The Court explained that discovery misconduct accompanied by lies to the Court and the opposing party effectuates serious prejudice and warrants terminating the action against the offending party. *Id.* at 992-93; *see Liberty Mutual Ins. Co. v. LcL Admin, Inc.*, 163 Cal. App. 4th 1093, 1103-06 (2008) (affirming terminating sanctions where party made false representations to court which were "insincere, if not downright deceptive," and otherwise engaged in "obfuscation and game playing"). Similarly, here, DLF and the Goodmans' conduct involved the violation of a court order, lasted *for months*, and was accompanied by misleading and obstructive game

16

BEYOND MEAT'S MOTION FOR SANCTIONS
AGAINST DON LEE FARMS
EXHIBIT 3
Page 16 of 21

playing tactics.  *See R.S. Creative, Inc. v. Creative Cotton, Ltd.*, 75 Cal. App. 4th 486, 498 (1999) (terminating and monetary sanctions where plaintiff engaged in "discovery games").

For these reasons, Beyond Meat requests that DLF and the Goodmans be prohibited from introducing the confidential Site Assessment Report in this litigation, including but not limited to at trial.  There is no excuse for their blatant violation.  DLF has taken its advocacy to the press and sought to publicly smear Beyond Meat.  That is not an appropriate use of the discovery process and a party's proprietary information shared under the expectations of confidentiality.  Indeed, Beyond Meat has exchanged significant volumes of "Confidential" and "Highly Confidential" material with DLF over the course of this litigation relying on the Protective Order's use restrictions to prevent unwarranted dissemination.[2]  (Yeung Decl. ¶ 3.)  This sanction is therefore necessary to ensure future adherence to the Protective Order, as DLF and the Goodmans have treated that order as nothing but a mere nuisance to their press relations strategy.  As such, evidentiary sanctions are appropriate here.

**2.      Monetary sanctions should be imposed on DLF, the Goodmans, and Loeb under California Code of Civil Procedure § 128.5 for Beyond Meat's motion practice to maintain the Site Assessment Report's confidentiality.**

Following the Protective Order's procedures, Beyond Meat expended considerable resources and effort to uphold the confidentiality of the Site Assessment Report.  This included meeting and conferring with DLF, drafting the briefing to uphold the report's confidentiality designation, and arguing the motion before the Discovery Referee.  In total, Beyond Meat spent at least $64,636.94 in bringing its successful motion to maintain the report's "Confidential" designation.  (Yeung Decl. ¶ 27.)

Notwithstanding Beyond Meat's success on the merits, its effort was rendered moot by DLF's and the Goodmans' disclosure of the confidential report to the press.  These actions were "frivolous and taken in bad faith," and warrant the imposition of sanctions pursuant to Section

---

[2] Beyond Meat's reliance on that order became all the more necessary when, during the course of this litigation, *DLF became a direct business competitor of Beyond Meat*, offering similar plant-based meat products.  (*See* Beyond Meat's First Amend. Cross-Compl. ¶¶ 88, 90, 92, 95.)_

17

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

BEYOND MEAT'S MOTION FOR SANCTIONS
AGAINST DON LEE FARMS
EXHIBIT 3
Page 17 of 21

128.5 of the Code of Civil Procedure. *See Wallis*, 168 Cal. App. 4th at 898. Each of DLF, the Goodmans, *and* Loeb should be ordered to recompense Beyond Meat for *all* of the expenses it expended in the same motion where it sought to maintain the confidentiality of the report—an amount of $64,636.94. Such costs are directly related to the misuse of discovery. *See Argaman v. Ratan*, 73 Cal. App. 4th 1173, 1179 (1999) ("A monetary discovery sanction may be based not only on attorney's fees and costs, but also on any other reasonable expenses incurred. The term 'reasonable expenses' includes other costs *directly related to the discovery misuse*.") (emphasis added); *see also Tenderloin Housing Clinic, Inc. v. Sparks*, 8 Cal. App. 4th 299, 307 (1992) ("[T]rial court may order a party . . . to pay *any reasonable expenses incurred* as a result of bad faith actions and tactics.") (emphasis in original).

Further, under Section 128.5(f)(1)(C) of the Code of Civil Procedure, DLF, the Goodmans, and Loeb (jointly and severally) should also be ordered to pay Beyond Meat's costs and fees in presenting *this Motion*. Cal. Code Civ. Proc. § 128.5(f)(1)(C) ("If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion."); *see also Tenderloin Housing Clinic, Inc.*, 8 Cal. App. 4th at 307. Such action is warranted in light of their egregious conduct, as well as their concerted efforts to conceal their wrongdoing from Beyond Meat and this Court. Beyond Meat has expended more than $75,113.84 to prepare and present this Motion to the Court.[3] (Yeung Decl. ¶ 29.)

In total, they should be ordered to compensate Beyond Meat in the amount of $139,750.78 under Section 128.5 for fees and costs related to (1) its initial motion to uphold the confidentiality of the Site Assessment Report, and (2) the present motion for sanctions.

**3.** **Monetary sanctions should also be imposed for Beyond Meat's efforts to discover "all pertinent facts" related to the improper disclosure.**

DLF's and the Goodmans' improper conduct was revealed only after Beyond Meat expended significant effort and resources. Such efforts included numerous communications with

---

[3] This only includes fees from *prior* counsel's work on the motion; it does not include undersigned counsel's fees.

18

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

DLF and ultimately, Beyond Meat's motion to compel DLF's responses to a formal discovery request. This conduct warrants monetary sanctions under Sections 2023.030 of the Code. *See* Cal. Code Civ. P. § 2023.030; *see also* § 2023.010 ("misuses of the discovery process" include making an "unmeritorious objection to discovery" and "[d]isobeying a court order to provide discovery"); § 2025.480(j) ("The court *shall* impose a monetary sanction . . . against any party, person, or attorney who unsuccessfully . . . opposes a motion to compel an answer or production") (emphasis added)); Cal. Rules of Court, Rule 3.1348(a) (Court may award sanctions to party whole files a motion to compel discovery, even though "the requested discovery was provided to the moving party after the motion was filed."). All told, Beyond Meat expended over $26,995.31 to obtain documents demonstrating DLF's and the Goodmans' willful violation of the Protective Order. (Yeung Decl. ¶ 28.) It is entitled to recompense of such costs from DLF, the Goodmans, and Loeb. *See* Cal. Code Civ. Proc. § 2030.030(a) (providing for payment of "reasonable expenses, including attorney's fees, incurred by anyone as a result of" conduct that is a "misuse of the discovery process").

**4.      <u>Sanctions in the amount of $1,500 are warranted for violations of the Protective Order, under Code of Civil Procedure § 177.5.</u>**

Under Section 177.5 of the Code, the Court is also authorized to "impose reasonable money sanctions, not to exceed fifteen hundred dollars ($1,500), notwithstanding any other provision of law, payable to the court, for any violation of a lawful court order by a person." The term "person" is broadly construed, to include "a witness, a party, a party's attorney, or both." *See id.* For sanctions to issue, the Court need only find "that the sanctioned party violate[d] a lawful court order 'without good cause or substantial justification.'" *See Seykora*, 232 Cal. App. 3d at 1080-81 (sanctions may be imposed so long as the party acted "without a valid excuse").

As described above, DLF and the Goodmans willfully disobeyed the Protective Order, and then Loeb violated its duty of candor by helping to conceal the misconduct. Because of the willful nature of their actions and their subsequent efforts to obfuscate their wrongdoing, the maximum sanction available under Section 177.5—$1,500—is appropriate as against each party.

19

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
CENTURY CITY

BEYOND MEAT'S MOTION FOR SANCTIONS
AGAINST DON LEE FARMS
EXHIBIT 3
Page 19 of 21

**5. <u>DLF and the Goodmans should be ordered to provide all pertinent facts related to the improper disclosure, and the Court should issue any other appropriate sanction.</u>**

Pursuant to Section 17 of the Protective Order, DLF should be immediately required to produce, without limitation:  (1) all communications with *Bloomberg News* or any other media outlet relating to Beyond Meat; and (2) all communications, including those with Loeb, relating to the improper disclosure of the report to *Bloomberg News* and attempts to conceal that disclosure.  Further sanctions should issue if DLF and the Goodmans fail to disclose fully all such communications within 14 days of a Court order to do so.  The Court should also issue an order admonishing DLF and the Goodmans for violating the Protective Order and issue any other sanction that it deems proper and appropriate.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Beyond Meat respectfully requests the Court grant its motion for sanctions against DLF, Donald Goodman, Daniel Goodman, and Loeb.

Dated:  August 25, 2020                                 Respectfully submitted,

LATHAM & WATKINS LLP
   Marvin S. Putnam
   Laura R. Washington


By /s/ Marvin S. Putnam
   Marvin S. Putnam
   Attorneys for Defendant and Cross-
   Complainant Beyond Meat, Inc.

20

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

BEYOND MEAT'S MOTION FOR SANCTIONS
AGAINST DON LEE FARMS
EXHIBIT 3
Page 20 of 21

# Journal Technologies Court Portal

# Make a Reservation

**DON LEE FARMS VS SAVAGE RIVER INC**

Case Number: BC662838    Case Type: Civil Unlimited    Category: Other Breach of Contract/Warranty (not fraud or negligence)
Date Filed: 2017-05-25    Location: Stanley Mosk Courthouse - Department 56

## Reservation

| | |
|---|---|
| Case Name: | Case Number: |
| DON LEE FARMS VS SAVAGE RIVER INC | BC662838 |
| Type: | Status: |
| Motion for Sanctions | RESERVED |
| Filing Party: | Location: |
| Beyond Meat, Inc. (fka Savage River dba (Defendant) | Stanley Mosk Courthouse - Department 56 |
| Date/Time: | Number of Motions: |
| 09/28/2020 8:30 AM | 1 |
| Reservation ID: | Confirmation Code: |
| 557944142370 | CR-Z7RZ3F94VAMYWH8FA |

## Fees

| Description | Fee | Qty | Amount |
|---|---:|---:|---:|
| Motion for Sanctions | 60.00 | 1 | 60.00 |
| Credit Card Percentage Fee (2.75%) | 1.65 | 1 | 1.65 |
| TOTAL | | | **$61.65** |

## Payment

| | |
|---|---|
| Amount: | Type: |
| $61.65 | MasterCard |
| Account Number: | Authorization: |
| XXXX8424 | 057372 |

🖶 Print Receipt    ➕ Reserve Another Hearing    👤 View My Reservations

Copyright © Journal Technologies, USA. All rights reserved.

Help

EXHIBIT 3
Page 21 of 21