EXHIBIT A

**Exhibit A**

*Analysis of Omitted "Facts" Listed in Plaintiffs' Opposition at Pages 9-10*

**Omitted "Fact" 1:** "Beyond Meat was unhappy with the ESA because the Company felt the minimum purchase were [sic] excessive." (Opp. at 9.)

**Response:** No court has determined, or been asked to determine, whether Beyond Meat was "unhappy" with the ESA. DLF has not asserted a breach of contract claim, or any claim, predicated on the Company's "unhappiness," and it is not the basis for a securities fraud claim. ~~In any event, the citations in DLF's own Amended Complaint bely Plaintiffs' assumption: Beyond Meat was frustrated not by the existence of minimum purchase requirements, but by the growing clarity that DLF was simply not "the right food service solution" and DLF's misrepresentations regarding its ability to handle the Company's production requirements. (*See* Casey Reply Decl., Ex. 2 at 42-44~~.

**Omitted "Facts" 2 and 3:** "Beyond Meat began negotiating with CLW two years prior to the expiration of the ESA. When DLF learned of Beyond Meat's negotiations with CLW it warned the Company that such negotiations were in breach of the ESA." (Opp. at 9.)

**Response:** The ESA did not (and could not) prohibit Beyond from communicating with other companies. Indeed, DLF does not assert a claim for breach predicated on the Company's alleged "negotiat[ions] with CLW." (*See* Casey MTD Decl., Ex. 2.) Rather, DLF (wrongly) asserts that Beyond Meat breached the ESA by, among other things, allegedly disclosing DLF's trade secrets. (*Id*. at 9.) As discussed below, Beyond Meat denies that claim and has asserted its own detailed cross-claims *against DLF* for misappropriating *Beyond Meat's* trade secrets. (*See* Casey Reply Decl., Ex. 2.)

- 1 -                     Case No. 2:20-cv-00963-MWF
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE

***Omitted "Fact" 4:*** "Defendant Brown lied to DLF's CEO representing that Beyond Meat would not move forward with CLW, when in fact, Company continued to negotiate with CLW to replace DLF." (Opp. at 9.)

***Response:*** There has been no fact established in the DLF litigation that Mr. Brown lied to *anyone* about *anything*, nor would this alleged fact render Beyond Meat liable for any claim asserted in the lawsuit.

***Omitted "Fact" 5:*** "Beyond Meat was using a proprietary process created by DLF to mass produce its products—a process that was 'totally different' from what the Company had been doing before it entered the ESA." (Opp. at 9.)

***Response:*** This is most certainly not a "fact." Beyond Meat has denied DLF's trade secrets claim and has asserted its own detailed trade secret claims *against DLF.* (*See* Casey Reply Decl., Ex. 2 at 10-11.)

***Omitted "Fact" 6:*** "Pursuant to the ESA, Beyond Meat could not disclose any confidential information received from DLF (including its BatchMaking Protocols and layout, product flow, room design, and equipment selection needed to manufacture products) without prior written consent." (Opp. at 9.)

***Response:*** The NDA was mutual, and Beyond Meat contends that DLF was the only party to violate its terms: by misappropriating Beyond Meat's trade secrets and disclosing a confidential Beyond Meat document to Bloomberg News three days before Beyond Meat's IPO in an effort to undermine the Company's IPO, the latter of which breach is the current subject of a sanctions motion filed by Beyond Meat. (Casey Reply Decl., Ex. 2 at 38-39; Ex. 3.) The evidence, moreover, plainly shows that the "Beyond Burger Batchmaking Protocol" is *Beyond Meat* confidential information that *Beyond Meat provided to DLF* that DLF now is attempting to pass off as its own. (*See* Response to Alleged Fact 10, *infra.*)

***Omitted "Facts" 7-9:*** "DLF's replacement, CLW, had no experience mass-producing plant-based meats and needed Beyond Meat's help to 'jump start' the

- 2 -                                              Case No. 2:20-cv-00963-MWF
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE

process. Despite having no experience mass-producing plant-based products, Beyond Meat believed CLW 'could be up and running in two to three weeks. Beyond Meat sent CLW design drawings to produce Beyond Meat product (something DLF alleges was subject [to] the mutual confidentiality agreement under the ESA)." (Opp. at 9-10.)

*Response:* Opinions regarding CLW's ability to be "up and running" are not facts, they certainly do not establish anyone's liability on any claim in the DLF litigation, and Plaintiffs' citations derive exclusively from a single former Beyond Meat employee, Don Ephgrave. (FAC ¶¶ 77, 82 (citing COE 68, 95-96).) The same is true for the "design drawings" allegations (*see* Am. Compl. ¶ 81 (citing COE 95, 105-106)), about which Ephgrave testified, "I'm pretty sure [another Company employee] showed [CLW] like design drawings of the lines and how it works." Nowhere in that cited testimony does Mr. Ephgrave claim that the alleged design drawings were confidential to DLF, .

*Omitted "Fact" 10:* "DLF's Batch Making Protocol for the Beyond Burger was found in files of ProPortion (CLW's 'alter ego')." (Opp. at 10.)

*Response:* ~~Defendants cite no evidence from the DLF litigation supporting the assertion that the "Batch Making Protocol" was the property of DLF.  (*See* Am. Compl. ¶ 89.)  That is because no such evidence exists.  Instead, the facts show that *Beyond actually sent DLF* the so-called "Beyond Batch Making Protocol" that was located in ProPortion's files and DLF is now attempting to fraudulently pass off as its own.  (Casey Reply Decl., Exs. 4, 5.)  Nor is it a "fact" that ProPortion and CLW are "alter egos."  ProPortion denied this assertion in summary judgment briefing.~~

*Omitted "Fact" 11:* "Beyond Meat failed to pay for products manufactured and delivered by DLF during the term of the ESA." (Opp. at 10.)

*Response:* Defendants discuss the Writ of Attachment order and its effect on the DLF litigation in the Motion to Dismiss. (*See generally* Mot. at 8-9 ("The order

on the 'attachment motion shall have no effect on the determination of any issues in the main action.'" (internal quotation marks omitted) (quoting Writ Order, Casey MTD Decl., Ex. 11 at 7 n.1)).

Case No. 2:20-cv-00963-MWF
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE